701 A.2d 531

COMMONWEALTH of Pennsylvania, Appellant,

v.

Michael P. WEBER, Appellee.

Supreme Court of Pennsylvania.

Submitted Jan. 29, 1997.

Decided Sept. 18, 1997.

John M. Morganelli, Easton, Anthony S. Beltrami, Bethlehem, for the Commonwealth.

Richard J. Makoul, Allentown, for Michael P. Weber.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

### OPINION

ZAPPALA, Justice.

On May 11, 1995, Michael Weber was convicted of statutory rape, rape, involuntary deviate sexual intercourse, and simple assault related to the sexual abuse of his daughter over a ten-year period. Weber was sentenced to an imprisonment term of twenty to forty years. On appeal, the Superior Court vacated the judgment of sentence and remanded the case for a new trial because it found that the trial court had erred in limiting defense counsel's closing argument. For the following reasons, we reverse the order of the Superior Court.

Prior to trial, Weber filed an omnibus motion for pre-trial relief requesting that he be permitted to introduce evidence of the fact that his daughter had an abortion in September, 1993. Weber asserted that the evidence was not precluded by the Rape Shield Law, 18 Pa.C.S. § 3104, because it would establish the bias of his daughter against him, since he would not have condoned the abortion, and it would be relevant to his defense of fabrication. At the hearing on the motion, Weber outlined his defense that his daughter fabricated the charges because she feared that Weber would find out about the abortion and administer corporal punishment, discontinue her financial aid for college, and take away her car. He argued that evidence that his daughter engaged in sexual intercourse with her boyfriend, resulting in the pregnancy that was terminated, would support this defense. The hearing judge entered an order on March 3, 1995, stating that "[t]he motion to permit inquiry into the proof of the abortion is denied without prejudice, to be exercised on defendant's application only if defendant can show the jury will have independent evidence of physical non-sexual assault on the victim which would engen-

der a fabrication by victim in an effort to prevent future assaults."

In his opening statement to the jury, Weber's attorney informed them that it was the defense's contention that the sexual abuse had never occurred. Defense counsel asserted that the daughter had been motivated to fabricate her claim of sexual abuse because she wanted to avoid corporal punishment by her father and "would do and did do anything to get out of that." Defense counsel stated,

And the testimony will show in this case, and like it or not, the defendant has to face up to this point that—my client did use and was a strict disciplinarian, corporal punishment, if you will. Whether that's good or bad is not the social issue which is going to be debated in this case. That's not what we're here for.

They'll [sic] be testimony bluntly from his son that Mr. Weber administered corporal punishment from fanny whackings to slaps in the face to both children over the years.

You're also going to see I am sure from the Commonwealth in this case a photograph which was taken, I believe, by Officer Achenbach. At least we have seen it at the preliminary hearing on November 20th of 1993 which depicts a bruise on [the daughter's], I believe, her left arm which occurred on November 12th of 1993.

We will admit that. The defendant will admit that to you because bluntly, ladies and gentlemen, you will have to decide in this case whether Mr. Weber did once or twice or maybe perhaps as many as 30 times, because that's the number of counts in front of you on simple assault, if he did, in fact, step over that line with regard to simple assault. And he'll tell you what he did.

N.T. May 8, 1995, p. 122. It appeared from the opening statement that Weber did not intend to dispute the fact that he had physically punished his daughter. Based upon this, the Commonwealth did not challenge the relevancy of the evidence of the abortion at the outset of the trial.

When Weber's daughter testified, she described being sexually assaulted by her father continuously over a ten-year period beginning when she was eight years old. The daughter testified that she was afraid that he would beat her if she refused to do what he demanded and that he had threatened to kill her and himself if she told anyone about the sexual abuse. She stated that her father used to beat her for any reason and that the physical and sexual abuse continued after she entered college. Although she lived in a college dormitory while attending school, her father required her to return home on the weekends. In November 1993, she told her college friends about her father's abuse and showed them bruises on her arm and leg that resulted from a recent beating that he had inflicted on her. The daughter then contacted the police and filed charges against Weber. Photographs of the daughter showing bruises to her arm and leg caused by the beating were introduced into evidence.

On cross-examination, the daughter testified that she had dated another teenager from January 1993 to the summer of 1994. When she discovered that she was pregnant in September 1993, she told her brother and his girlfriend and asked them not to tell her parents about the pregnancy or the fact that she had decided to have an abortion. Defense counsel also questioned her about a false report that she had made to the police department in 1990 in which she claimed that she was kidnapped from school by two Puerto Rican males. The daughter testified that she had made up the kidnapping story because school report cards were going to come out and she knew that her father would be mad at her.

Weber testified on his own behalf, claiming that except on rare occasion he only verbally disciplined his daughter. Weber testified that he spanked his daughter infrequently and that he only smacked her in the mouth as punishment twice when she swore at him. He denied ever throwing a glass at his daughter or striking her with a belt, attributing any bruises suffered by her to her involvement in martial arts. Rather than admitting to corporal punishment of his daughter, as anticipated after defense counsel's opening statement, Weber

contradicted his daughter's claim of physical assaults by his own testimony and that of his wife, grandmother and mother who also testified that Weber rarely punished his daughter physically. The witnesses testified that Weber and his daughter had a typical father-daughter relationship and that the daughter had never displayed any fear of Weber.

When defense counsel thereafter attempted to call Weber's son's girlfriend to testify about the daughter's abortion, the Commonwealth objected because Weber's denial that there was any physical abuse or corporal punishment of his daughter rendered the evidence of the abortion inadmissible under the earlier ruling on the omnibus pre-trial motion. In a sidebar conference, defense counsel conceded that Weber's position that the evidence of the abortion was admissible to establish his daughter's motive to fabricate the events was incompatible with his outright denial that he had ever physically abused his daughter, but asserted that the evidence was relevant should the jury determine that the daughter's testimony was credible and that Weber's testimony was unbelievable. The trial judge rejected this argument and ruled that testimony of the daughter's conversation with her brother and his girlfriend about the pregnancy and abortion was inadmissible because Weber had undermined the foundation stated in his pre-trial motion for offering that evidence by denying that he used corporal punishment. The trial judge reasoned that Weber could not offer inconsistent defenses by claiming that the physical assaults had never occurred and also that his daughter had fabricated the sexual abuse charges to avoid being physically punished should Weber learn of the abortion. Defense counsel then requested an opportunity to discuss the ruling with Weber, which was granted.

Prior to closing arguments, the prosecutor made a motion to preclude defense counsel from referring to the abortion, arguing that because Weber had denied using corporal punishment and had failed to come forward with other facts to support the physical assault he could not argue that the charges were fabricated to avoid the corporal punishment that he had denied. Defense counsel agreed that such argument would be

improper in view of the trial judge's ruling, but noted for the record that if he had been permitted to introduce the excluded testimony he would have made an argument that Weber's daughter had fabricated the charges because of her fear of physical assault.

On appeal to the Superior Court, Weber asserted that the trial judge erred in applying the Rape Shield Law to preclude him from introducing, and commenting upon during closing argument, the testimony concerning the abortion. The Superior Court found that the trial judge had erred in refusing to allow Weber's son and the son's girlfriend to testify about their conversation with his daughter, but determined that the error was harmless because the testimony would have merely been cumulative since the daughter had testified regarding the conversation. The court found that the limitation placed on defense counsel's closing argument was improper, however, reasoning that defense counsel should have been permitted to comment on the daughter's evidence that she feared being beaten by Weber because of her pregnancy and planned abortion and to draw an inference that the daughter had fabricated the charges to avoid a beating. Judge Eakin dissented on the basis that Weber had directly negated the defense theory that underlay his assertion that the evidence was admissible as an exception to the Rape Shield Law, stating that "the introduction of highly prejudicial and otherwise inadmissible evidence should not be countenanced when the defense theory of relevance is specifically refuted by the proponent himself." *Commonwealth v. Weber*, 450 Pa.Super. 32, 53, 675 A.2d 295, 305 (1996).

■ The admissibility of evidence is a matter within the sound discretion of the trial court and will be reversed only where there is a clear abuse of discretion. *Commonwealth v. Johnson*, 536 Pa. 153, 157, 638 A.2d 940, 942 (1994). In determining whether the evidence related to the daughter's abortion was admissible, we must examine the Rape Shield Law, which provides:

§ 3104. **Evidence of victim's sexual conduct**

**(a) General rule.**—Evidence of specific instances of the alleged victim's past sexual conduct, opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past sexual conduct shall not be admissible in prosecutions under this chapter except evidence of the alleged victim's past sexual conduct with the defendant where consent of the alleged victim is at issue and such evidence is otherwise admissible pursuant to the rules of evidence.

"The purpose of the Rape Shield Law is to prevent a sexual assault trial from denigrating into an attack upon the victim's reputation for chastity." *Johnson*, 536 Pa. at 158, 638 A.2d at 942 (citation omitted). The Rape Shield Law applies to evidence concerning a victim's abortion because it necessarily implicates past sexual conduct. The application of the Rape Shield Law to evidence of an abortion does not foreclose any possibility that the evidence will be admitted at trial, however, as we have recognized that evidence of sexual acts involving the victim may be admissible in some instances.

In *Commonwealth v. Majorana*, 503 Pa. 602, 470 A.2d 80 (1983), we held that the Rape Shield Law does not bar the admission of evidence which is directly relevant to negate the charges against the defendant, such as evidence of acts of intercourse offered to prove that such acts, and not a sexual assault, caused the objective signs of intercourse. We stated that "[a]dmitting such evidence for the limited purpose of denying the act charged properly balances the laudable goals of the statute and an accused's fundamental right to present in defense his own version of the facts under both the Sixth Amendment to the Federal Constitution and Article I, Section 9 of our Pennsylvania Constitution." 503 Pa. at 603, 470 A.2d at 81 (footnote omitted).

In *Commonwealth v. Johnson*, supra, we held that the Rape Shield Law did not prohibit the admission of evidence regarding a prior sexual assault suffered by the ten-year old victim when the defendant sought introduction of the testimony to establish that the victim was blaming him for the assault at the instigation of another individual who had sexually assault-

ed her on a prior occasion. We reasoned that the Rape Shield Law was not intended to prohibit such evidence because it was not conduct of the victim that would reflect upon her reputation for chastity. See also, *Commonwealth v. Killen,* 545 Pa. 127, 680 A.2d 851 (1996) (sexually provocative statements of victim made to third persons after alleged sexual assault admissible to establish victim's state of mind); *Commonwealth v. Jorgenson,* 512 Pa. 601, 517 A.2d 1287 (1986) (evidence of victim's prior sexual conduct admissible to explain presence of seminal acid phosphatase in victim's clothing and internal bruising of victim's vagina).

In this case, the Superior Court concluded that the evidence was admissible because Weber's testimony that no history of abuse existed was not inconsistent with the daughter's testimony. The court reasoned that "[w]hile evidence of a history of physical abuse would clearly lend itself to the conclusion that Daughter actually feared being beaten, absence of such evidence does [not] necessarily mean that genuine fear did not exist." 450 Pa.Super. at 47, 675 A.2d at 303. Had Weber presented a defense at trial that his daughter had an unfounded fear that he would physically abuse her, the court's reasoning would be persuasive. Weber did not present such a defense, however. Instead, Weber introduced the testimony of his wife and other family members that his daughter was not fearful of her father.

At the hearing on the omnibus pre-trial motion, Weber asserted that the evidence of his daughter's abortion was relevant to establish bias and motive to fabricate the charges because she feared that he would beat her. Contrary to this assertion, Weber later denied at trial that he used corporal punishment as a form of discipline and introduced evidence that he had a close, loving relationship with his daughter. By denying the foundation for his defense of bias or fabrication of the charges, Weber failed to demonstrate that the evidence was admissible notwithstanding the Rape Shield Law. As the proponent of the evidence, Weber bore the burden of establishing the admissibility and relevancy of his daughter's abortion. When the evidence that he submitted at

trial did not conform with the offer of proof as to the admissibility of the evidence given at the earlier hearing, the trial judge did not abuse his discretion in ruling that evidence of the daughter's abortion was inadmissible and in restricting defense counsel's closing argument to the jury.

The order of the Superior Court is reversed and the judgment of sentence is reinstated.