**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KYLE F. RAUBENSTINE | : | No. 138 MDA 2018 |

Appeal from the Order Entered December 18, 2017
In the Court of Common Pleas of York County
Criminal Division at No(s):  CP-67-CR-0002563-2017

BEFORE:  OTT, J., McLAUGHLIN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY OTT, J.:                    **FILED NOVEMBER 15, 2018**

The Commonwealth appeals from the December 18, 2017, order,[1] granting in part Kyle F. Raubenstine's pre-trial motion *in limine* to permit evidence of the victim's past sexual conduct pursuant to the Rape Shield Law[2] ("Rape Shield Motion").[3]  Raubenstine, and his co-defendant, were charged with sexually assaulting the victim at a house party in June of 2016.  On appeal, the Commonwealth argues the trial court erred in permitting the

---

[1]  The Commonwealth has certified the trial court's order will terminate or substantially handicap its prosecution, in accordance with Pa.R.A.P. 311(d).

[2]  **See** 18 Pa.C.S. § 3104.

[3]  The Commonwealth has filed an identical appeal with respect to Raubenstine's co-defendant, Brandon Arbogast, at Docket No. 139 MDA 2018. This Court directed that the appeals be listed consecutively.

admission of evidence regarding the victim's subsequent sexual encounter with a third party.  Based on the following, we reverse and remand.

The underlying facts are taken from the affidavit of probable cause:

On [October 10, 2016,] at 0847 hours, a sexual assault report was received through York County 911 alleging two adult males sexually assaulted an adult female on [June 19, 2016,] in West Manheim Township.

On [October 10, 2016,] at approximately 1122 hours, Affiant interviewed [the victim].  [The victim] reported that she attended a party on said date at 32 Malek Drive in West Manheim Township.

[The victim] reported that she was intoxicated and at times unable to resist against Kyle Raubenstine [] and Brandon Arbogast's [] sexual advances.

[The victim] disclosed that she was sleeping in a downstairs bedroom where she woke up to [Raubenstine] taking her clothes off.  [Raubenstine] then forced his penis into her vagina which caused a lot of pain.  [The victim] passed out for an unknown amount of time before next waking up to [Arbogast] having vaginal intercourse with her.  [The victim] passed out again and next woke up to [Arbogast] forcing his penis into her anally causing more pain.

[The victim] next woke when she noticed [Raubenstine] was back with her.  [Raubenstine] put [the victim's] hand on his penis and persistently forced her to stroke him in an[] up an[d] down motion.  [The victim] reports she was sobering up and was now capable of giving [Raubenstine] verbal commands to cease the sexual advances.  [Raubenstine] continued the advances and told [the victim] to perform oral sex on him and pulled her head down to his penis.  [Raubenstine] made attempts to thrust his penis into her mouth.  [The victim] was eventually capable at pushing [Raubenstine] away and persuaded him to leave.

Cell phones were seized and forensically examined. Messages were recovered showing [Raubenstine] and [Arbogast] text multiple people within the following days demonstrating

concern [the victim] would report the assault to authorities, showing a consciousness of guilt.

Affidavit of Probable Cause, 3/20/2017, at 1.

As noted above, the victim did not immediately report the assault. She went off to college, where she had sexual intercourse with a third party, R.B., while intoxicated on October 6, 2016.[4] Three days after her sexual encounter with R.B., the victim went home and reported the sexual assault with respect to Raubenstine and Arbogast.

Both Raubenstine and Arbogast were subsequently charged with rape (unconscious victim), criminal attempt (IDSI forcible compulsion), sexual

---

[4] Several days earlier, on October 2, 2016, the victim and R.B. engaged in a series of text messages. **See** N.T., 11/30/2017, Defendant's Exhibit 1, at unnumbered 2; **see also** R.R. 139a. When R.B. asked the victim why she did not want to meet up with him, the following exchange occurred:

> [The victim:] Guys just tend to treat me like shit after sex and I'm kind of sick of it[.]
>
> [R.B.:] Well I'm sure you've heard it all before like the "Im [sic] not that kind of guy" and all that. But if you don't want to hookup I'll respect that[.....]
>
> [The victim:] Thank you[. ] I've just had bad experiences in the past so I'm kinda guarded now[.]

**Id.**

assault, and indecent assault (unconscious person).[5]   Their cases were consolidated for trial proceedings.

On October 10, 2017, Raubenstine filed a pre-trial Rape Shield Motion, which concerned, *inter alia*, the victim's subsequent sexual activity with R.B.[6] He averred this evidence demonstrated the victim's interest and bias, and her motive to lie, fabricate, or seek retribution.   ***See*** Omnibus Pre-Trial Motion/Motion for Habeas Corpus/Motion in Limine, 10/10/2017, at ¶ 11.[7]  An *in camera* hearing was held on November 30, 2017.  Both the victim and R.B. testified, which the trial court summarized, in pertinent part, as follows:

> During the hearing, [the victim] and R.B. testified, and text messages between R.B. and [the victim] were introduced.  Text messages between [the victim] and other individuals, and other related documents were also introduced.  Testimony and the text messages between [the victim] and R.B. indicate that they had a sexual encounter on the night before October 7, 2016.  On October 7, 2016, [the victim] texted R.B. about the encounter with R.B., where she indicated that she did not remember whether they had sexual intercourse the night before.  On that same day, she discussed her encounter with R.B. and her encounter with the defendants.  The time between the texts about R.B. and the defendants were within hours of each other.
>
> Three days later, on October 10, 2016, [the victim] reported to police the alleged incident with the defendants[.]

---

[5]  18 Pa.C.S. §§ 3121(a)(3), 901(a), 3121(a)(3), 3124.1, and 3126(a)(4), respectively.

[6]   Raubenstine also sought to introduce evidence of his prior sexual relationship with the victim, which the trial court granted in its December 18, 2017, order, but that evidence is not at issue in this appeal.

[7]  Arbogast filed a similar Rape Shield Motion on September 18, 2017.

Trial Court Opinion, 1/23/2018, at 4-5.

On December 18, 2017, the trial court granted in part Raubenstine's Rape Shield Motion, specifically permitting the admission of evidence regarding the "incident" with R.B.[8] *See* Order, 12/18/2017, at unnumbered 1, 3. The Commonwealth then filed this appeal.[9]

In its sole issue on appeal, the Commonwealth raises the following argument:

> The trial court erred in granting [Raubenstine]'s motion to pierce the Rape Shield Statute by admitting testimony of the victim's sexual activity with a third party, R.B., where the victim's subsequent, consensual sexual activity with R.B. occurred months later and does not show the victim's bias, motivation to fabricate, lie, or seek retribution, or lack of credibility with respect to the allegations of non-consensual sexual actions between the victim and [Raubenstine]. There is no nexus between the subsequent sexual conduct and the instant charges that serves as an impetus for lying or retaliation. Moreover, the proffered evidence only serves to create an overwhelming prejudicial effect as it focuses attention on the victim's reputation for chastity and not on whether [Raubenstine] and his co-defendant raped her. Finally, there are alternative means by which [Raubenstine] can introduce evidence of bias and motive to fabricate that do not involve the victim's subsequent sexual relationship with R.B.

Commonwealth's Brief at 12.

---

[8] The court filed an opinion explaining its rationale for its December 18, 2017, order on January 23, 2018.

[9] On January 22, 2018, the trial court ordered the Commonwealth to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The Commonwealth filed a concise statement on February 6, 2018. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on February 26, 2018, relying on its January 23, 2018, opinion.

"A trial court's ruling on the admissibility of evidence of the sexual history of a sexual abuse complainant will be reversed only where there has been a clear abuse of discretion." **Commonwealth v. K.S.F.**, 102 A.3d 480, 483 (Pa. Super. 2014) (citations omitted). "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence of record, discretion is abused." **Id.** (citation and quotation omitted).

The Rape Shield Law provides, in pertinent part, as follows:

**§ 3104. Evidence of victim's sexual conduct**

**(a) General rule**.-Evidence of specific instances of the alleged victim's past sexual conduct, opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past conduct shall not be admissible in prosecutions under this chapter except evidence of the alleged victim's past sexual conduct with the defendant where consent of the alleged victim is at issue and such evidence is otherwise admissible pursuant to the rules of evidence.

18 Pa.C.S. § 3104(a). The purpose of the Rape Shield Law is "to prevent a trial from shifting its focus from the culpability of the accused toward the virtue and chastity of the victim." **Commonwealth v. Burns**, 988 A.2d 684, 689 (Pa. Super. 2009) (citation omitted), *appeal denied*, 8 A.3d 341 (Pa. 2010). Moreover, "[t]he Rape Shield Law is intended to exclude irrelevant and abusive inquiries regarding prior sexual conduct of sexual assault

complainants." *Id.  See also Commonwealth v. Largaespada*, 184 A.3d 1002, 1006-1007 (Pa. Super. 2018).

"[P]rior sexual conduct with third persons is ordinarily inadmissible to attack the character of the prosecutrix in sex offense cases. 1A Wigmore, Evidence § 62 (Tillers rev. 1983)." *Commonwealth v. Black*, 487 A.2d 396, 398 (Pa. Super. 1985).[10]  However, in a case where "the evidence of prior sexual conduct was not offered merely to show any general moral turpitude or defect of the prosecutrix, but rather to reveal a specific bias against and hostility toward appellant and a motive to seek retribution by, perhaps, false accusation[,]" the evidence may be admissible.  *Id.* at 398-399.[11]

In *K.S.F.*, this Court further explained:

Although the literal language of the Rape Shield Law would appear to bar a wide range of evidence, courts have interpreted the statute to yield to certain constitutional considerations implicating the rights of the accused.  *See, e.g., Commonwealth v. Riley*,

---

[10] *See also Commonwealth v. Fink*, 791 A.2d 1235, 1241-1242 (Pa. Super. 2002).

[11]  Moreover, the Rape Shield Law applies to sexual activity that occurred before trial, whether it was before or after the alleged sexual assault.  *See Commonwealth v. Jones*, 826 A.2d 900, 908-909 (Pa. Super. 2003) ("[The Pennsylvania Supreme Court has explained that the specific purpose of the Pennsylvania Rape Shield Law is to prevent a sexual assault trial from degenerating into an attack upon the collateral issue of the complainant's reputation rather than focusing on the relevant legal issues and the question of whether the events alleged by the complainant against the defendant actually occurred.  This purpose is not fostered by limiting application of our Rape Shield Law to sexual conduct that occurred before the incident giving rise to criminal charges but allowing a defendant to besmirch a complainant with accusation and innuendo based on her conduct after an alleged rape.").

434 Pa. Super. 414, 643 A.2d 1090, 1093 (Pa. Super. 1994) (right to cross-examine witnesses).

> Evidence that tends to impeach a witness' credibility is not necessarily inadmissible because of the Rape Shield Law. [**Commonwealth v. Black**, 337 Pa. Super. 548, 487 A.2d 396, 401 (Pa. Super. 1985)]. When determining the admissibility of evidence that the Rape Shield Law may bar, trial courts hold an *in camera* hearing and conduct a balancing test consisting of the following factors: "(1) whether the proposed evidence is relevant to show bias or motive or to attack credibility; (2) whether the probative value of the evidence outweighs its prejudicial effect; and (3) whether there are alternative means of proving bias or motive or to challenge credibility." **Id.**

**K.S.F.,** 102 A.3d at 483-484.[12] Stated more concisely, evidence of a victim's sexual history may be admissible if "the evidence is relevant to exculpate the accused, more probative than prejudicial, and non-cumulative in nature." **Commonwealth v. Guy**, 686 A.2d 397, 401 (Pa. Super. 1996), *appeal denied*, 695 A.2d 784 (Pa. 1997).[13]

Here, in his Rape Shield Motion, Raubenstine's proffered evidence of the victim's subsequent sexual encounter with R.B. was a challenge to the victim's

---

[12] "Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence[,] and the fact is of consequence in determining the action." Pa.R.E. 401. **See also Commonwealth v. Tyson**, 119 A.3d 353, 358 (Pa. Super. 2015) (stating that "[e]vidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact."), *appeal denied*, 128 A.3d 220 (Pa. 2015). Nevertheless, "[t]he court may exclude relevant evidence if its probative value is outweighed by the danger of ... unfair prejudice[…]." Pa.R.E. 403.

[13] **See also Commonwealth v. Allburn**, 721 A.2d 363 (Pa. Super. 1998), *appeal denied*, 739 A.2d 163 (Pa. 1999).

credibility, pertinent to explain her bias and motivation to fabricate the sexual assault allegations. *See* Omnibus Pre-Trial Motion/Motion for Habeas Corpus/Motion in Limine, 10/10/2017, at ¶ 18. Following the November 30, 2017, *in camera* hearing, the trial court explained its rationale for admitting the evidence:

> [T]he evidence is relevant. The Court notes that while the evidence involving [the victim] and R.B. involved two similar incidents, the evidence is not relevant to show that the victim acted in conformity with her past behavior, which is a prohibited use of the information. ***Commonwealth v. Guy***, 686 A.2d 397, 401-02 ([] Pa. Super. 1996). Rather, [the victim]'s bias, credibility and motive to fabricate or seek retribution are at issue. The time between the alleged incident with the defendants and intercourse with R.B., the time between intercourse with R.B. and [the victim]'s report to the police, the text messages about the two separate acts and time between the texts about the acts on October 7 and the police report raise the issue of [the victim]'s bias, credibility and motive to fabricate or seek retribution. Here, while the alleged incident occurred in June 2016, [the victim] did not report to police until October 10, 2016. Intercourse with R.B., however, occurred four days before [the victim] reported to police on October 10. On October 7, 2016, [the victim] texted others about intercourse with R.B., and about the alleged incident involving the defendants, just three days before the police report. Furthermore, the defense argued that both the [] sexual acts with R.B. and the defendants involved alcohol, and intermittent lapses of consciousness and memory.
>
> Defense counsel argued that [the victim] reported Raubenstine and Arbogast because of how they treated her after their sexual contact. Defense counsel further argued that [the victim] did not report having unconscious sexual intercourse with R.B. because of how he treated her well afterwards. Then, defense counsel argued that [the victim]'s motive to lie may have come from worrying about her reputation. Specifically, defense counsel argued that, unlike the intercourse with R.B., [the victim]'s reputation in her hometown suffered from the alleged incident with the defendants, and that she therefore had a motive to lie.

Therefore, this information is relevant, and it is not cumulative of evidence otherwise admissible at trial. This information is more probative than prejudicial. Under [**Commonwealth v. Wall**, 606 A.2d 449 (Pa. Super. 1992)], this evidence must be admitted. This evidence demonstrates a potential for bias and may attack [the victim]'s credibility. It is also evidence that may exculpate the accused by showing [the victim] was biased and had a motive to lie, fabricate or seek retribution through prosecution. There isn't an alternative means of proving bias or motive or to challenge credibility. Further, the probative value of the evidence outweighs its prejudicial effect, and there does not seem to be an "alternative means of proving bias or motive or to challenge credibility."

Trial Court Opinion, 1/23/2018, at 5-7.

We disagree with the trial court's determination. The trial court largely focuses on the timing of the two incidents (the June 2016 assault involving Raubenstine and Arbogast and the October 2016 sexual encounter with R.B.) with respect to when the victim decided to report the June 2016 assault, how the victim was allegedly treated negatively by Raubenstine and Arbogast, following the respective sexual acts, as opposed to the favorable treatment she received from R.B., and the victim's concern for her reputation in the community as potential proof of the victim's motive to lie, fabricate or seek retribution through prosecution, and therefore, reasons to admit the evidence involving R.B. We find that the correlation, particularly relevance and probative value, between these two incidents is far too attenuated to support the court's conclusion.

With regard to the first prong of the **Black** test, the simple fact that the victim had sex with R.B. approximately four months after the alleged assault

- 10 -

at issue is not relevant to show the victim had a motive to lie about being sexually assaulted by Raubenstine and Arbogast, nor does it demonstrate the victim was biased against and/or harbored hostility towards the co-defendants. Evidence of a sexual relationship between the victim and R.B. is purely evidence of a sexual relationship, and in and of itself, is insufficient to infer a motive to contrive a false assault. Moreover, evidence that both incidents shared similarities, namely the involvement of alcohol and the victim's lack of memory, again, suggest nothing as to fabrication or retribution on the part of the victim. Likewise, the nature of her encounter with R.B., including whether it was consensual, and his subsequent treatment towards her (versus how Raubenstine and Arbogast treated her) does not establish that the assault at issue did not happen or that she consented to Raubenstine's and Arbogast's actions.[14] Additionally, the text messages that the victim exchanged with R.B. do not speak to consent, retaliation, or retribution with

_____

[14] Indeed, there is no evidence showing Raubenstine and Arbogast knew about the victim's sexual encounter with R.B. prior to her reporting the incident involving them to the police. Hypothetically, if Raubenstine and Arbogast knew about the incident with R.B. and had told others in the community about the victim's promiscuous actions, there could be some substance to their argument from which to infer that the victim fabricated these allegations to retaliate against them. However, the record is lacking as to such assertions. **See Largaespada**, 184 A.3d at 1007-1008 (evidence of victim's sexual relationship with her uncle was not admissible where: (1) evidence of the relationship was just evidence of a relationship; and (2) appellant-father did not know about victim-daughter's relationship at the time she reported the sexual abuse to police).

respect to the prior assault. **See** N.T., 11/30/2017, Defendant's Exhibit 1, at unnumbered 2. Rather, the victim reflected generally upon her past sexual history, and not a specific individual or individuals.[15] **See also Commonwealth v. Northrip**, 945 A.2d 198, 206 (Pa. Super. 2008) (affirming trial court's preclusion of victim's diary entries that contained no reference to victim's sexual abuse by stepfather; "[b]ecause the evidence contained in these books have had no probative value, we agree with the trial court that the evidence was irrelevant and did not qualify as impeachment evidence"), *aff'd on other grounds,* 985 A.2d 734 (Pa. 2009).

Furthermore, the timing of when the victim decided to report the assault, shortly after she had sex with R.B., is simply a mere coincidence,[16] and does not evince a notion that the victim had a motive to lie about the prior rape. Lastly, the use of the evidence to show the victim's concern over her reputation in the community is pure conjecture, as there is nothing about her consensual encounter with R.B., which would cause her to have an apprehension about her reputation in the community and trigger her to

---

[15] Again, if Raubenstine and Arbogast had presented evidence from these text messages which showed the victim intended to lie about her claims, or from which motive could be inferred, then the messages would be admissible. However, without more, this evidence is not relevant to the matter at hand.

[16] **See** N.T., 11/30/2018, at Defendant's Exhibit 5 (text messages on October 7, 2016 from the victim to various friends regarding the incident with Raubenstine and Arbogast and want to reporting it, and to R.B. regarding their encounter from the night before).

fabricate the prior sexual assault. Accordingly, the proposed evidence is not relevant to show the victim's bias or motive, or to attack her credibility, as it provides minute understanding into the specific events surrounding the sexual offenses for which Raubenstine and Arbogast are charged, and it does not assist in refuting the argument that the victim did not consent to the sexual activity at issue. *See Black*, *supra*.

With regard to the second prong of the **Black** test, we find the prejudicial impact of the proposed evidence would far outweigh any probative value as it serves no purpose other than to shift the fact-finder's focus "from the culpability of the accused toward the virtue and chastity of the victim[,]" which is what the Rape Shield Law was intended to preclude. **Burns**, 988 A.2d at 689. In **Commonwealth v. Johnson**, 566 A.2d 1197 (Pa. Super. 1989), *aff'd*, 638 A.2d 940 (Pa. 1994), this Court held "the Rape Shield Law is a bar to admission of testimony of prior sexual conduct involving a victim, … unless it has probative value which is exculpatory to the defendant." **Id**. at 1202. Moreover, "[t]he **Black** Court's express motivation for the test is to exclude relevant evidence that would 'so inflame the minds of jurors that its probative value is outweighed by unfair prejudice.' 487 A.2d at 401 (citing **Commonwealth v. Stewart**, 304 Pa. Super. 382, 450 A.2d 732, 734 (Pa. Super. 1982))(quotation marks omitted)." **K.S.F.**, 102 A.3d at 484-485. Indeed, evidence of the victim's sexual encounter with R.B. would not exculpate either Raubenstine or Arbogast as it has no relevance to whether or

not they sexually assaulted the victim. It would also lend towards smearing the victim's character and inflaming the minds of the fact-finders.

Lastly, with respect to the third prong of the **Black** test, whether there are alternative means of proving bias or motive or to challenge credibility, we note:

> Our jurisprudence is scant on instances that have explored this factor in depth, however, several cases are instructive. In **Commonwealth v. Weber**, 450 Pa. Super. 32, 675 A.2d 295, 302 (Pa. Super. 1996), **rev'd on other grounds** 549 Pa. 430, 701 A.2d 531 (Pa. 1997), this Court found that the third prong was not satisfied where the evidence sought to be admitted only added to a short list of evidence that tended to attack the victim's credibility. The **Weber** Court admitted the evidence, however, because it also tended to show the victim's motive. **Id**. In **Commonwealth v. Killen**, 545 Pa. 127, 680 A.2d 851, 854 (Pa. 1996), our Supreme Court held that suggestive statements made by the victim shortly after the alleged sexual assault, in which she appeared jovial, were admissible, not to show her promiscuous demeanor, but to undermine the credibility of her claims that she had been sexually assaulted. The court noted that this evidence did not speak to past behavior, but directly to the crime charged, and therefore was not barred by the Rape Shield Law. **Id**.

**K.S.F.**, 102 A.3d at 485. In the present case, in order to undermine the victim's credibility, defense counsel can cross-examine the victim concerning inconsistencies and contradictions as to her memory about the night of the alleged assault, her use of alcohol, her text messages to friends about the treatment she received from Raubenstine and Arbogast following the incident and her concern about her reputation in the local community.

This case is distinguishable from prior case law, which found certain victim prior sexual conduct evidence relevant, probative, and admissible. **See**

*Northrip*, 945 A.2d at 201 (noting trial court erred when it prevented appellant-father's wife from testifying as to victim-daughter's motive to fabricate the allegations against defendant where: (1) victim-daughter had a sexual relationship with her stepbrother, (2) victim-daughter threatened to retaliate if anyone told her mother; (3) appellant-father and wife scheduled a time to talk to the victim's mother; and (4) victim-daughter then went to the police and reported that appellant-father sexually abused her); *Commownealth v. Fernsler*, 715 A.2d 435 (Pa. Super. 1998) (evidence that victim-son was in a juvenile sex offenders program for conduct towards his half-sister was admissible to show he fabricated sexual abuse allegations against appellant-father in order to receive more lenient treatment); *Commonwealth v. Poindexter*, 539 A.2d 1341, 1344 (Pa. Super. 1988) (concluding defendant-father could attempt to show the victim-daughter's motive to fabricate rape allegations by presenting evidence of her romantic relationship with her boyfriend, which defendant-father did not approve of and sought to discontinue by filing charges against victim-daughter's boyfriend, but evidence that relationship was sexual in nature was not probative and highly prejudicial).

Accordingly, based on the *Black* balancing test, we find all three prongs have not been satisfied. As such, we conclude the trial court erred in determining that the proffered evidence was relevant to establish a motive to fabricate on the part of the victim, and in granting Raubenstine's Rape Shield

Motion. Therefore, we reverse and remand for proceedings consistent with this memorandum.

Order reversed. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/15/2018