J-S30033-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DONALD EUGENE WINDON, JR. | : | |
| | : | |
| Appellant | : | No. 498 MDA 2021 |

Appeal from the PCRA Order Entered April 13, 2021
In the Court of Common Pleas of York County
Criminal Division at No(s):  CP-67-CR-0006069-2018

BEFORE:   BENDER, P.J.E., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED MARCH 04, 2022**

Donald Eugene Windon, Jr., appeals from the order that dismissed his timely-filed petition submitted pursuant to the Post Conviction Relief Act (PCRA). **See** 42 Pa.C.S.A. §§ 9541-9546. On appeal, Windon contends that his trial counsel was ineffective for failing to file a motion that would have served to pierce Pennsylvania's Rape Shield Law (RSL). **See** 18 Pa.C.S.A. § 3104. Windon asserts that had such a motion been filed and correctly ruled upon, certain evidence would have been admitted, bolstering his defense at trial. Although we stress that trial counsel should have complied with the RSL's written motion directive, we conclude Windon has failed to demonstrate merit to his underlying issue and affirm.

By way of background, the victim testified that, at age fourteen, she

_____

[*] Retired Senior Judge assigned to the Superior Court.

had been raped by her uncle, Windon, in her grandparents' three-bedroom home.[1] The victim had just gone to the bathroom when, upon exiting, Windon told her to come into his bedroom to see something. After entering the bedroom, Windon grabbed her and proceeded to put his hands down her pants. When the victim tried to push away, Windon said: "oh, come on, I'm on molly, I'm really horny and I need this." N.T., 9/24/19, at 124.

Windon forcibly placed the victim onto his bed and then got on top of her, using his body weight to pin her down. While in this position, Windon put a condom on, licked the victim's vagina, and then, Windon stuck his penis inside of her vagina. When Windon finished, he got off of the victim and laid down next to her. The victim maintained that she did not yell out to her grandmother, who was at that point sleeping in the house, because she could not find the voice to do so.[2]

The victim then asked if she could leave, to which Windon agreed. Before the victim left the room, Windon told her not to tell anyone what had happened because he was scared that he would lose his children should that information become disseminated.

The victim detailed what had happened by writing a note in her cell

_____

[1] Windon moved into this home, the residence of his parents, after splitting up with his wife. *See* N.T., 9/25/19, at 471-472.

[2] The grandmother would later testify that she was awake during the timeframe the victim had described, but did not hear any voices or noises from Windon's bedroom. *See* N.T., 9/25/19, at 419. She would also emphasize how thin her house's walls were.

phone a short time after the event. In that note, she, among other things, stated that she wanted to tell someone about what had happened, but that it would cause trouble for Windon and she could face backlash. The victim additionally performed an internet search asking what she should do in the event she had been raped. The search yielded information, at least on a surface level, related to rape treatment centers.

The victim explained that she did not immediately go to the hospital because she feared the process surrounding admitting to having been raped and the unknown nature, to her, of rape-related medical services. However, the victim disclosed to her grandparents what had happened that night, and correspondingly believed that they would throw Windon out of their house.

Ultimately, the victim went to the hospital two days later, but she would later indicate that she was unaware that pursuing this course of action would result in her having to undergo a sexual assault forensic exam. At the hospital, the victim confided in a nurse the details of the rape, breaking down and crying at certain points. That nurse did not observe any injuries to the victim's genitalia, but would testify that many rapes occur without injuries, visible or otherwise. No male DNA was found on any of the vaginal swabs taken from the victim.

The comforter from Windon's bed would eventually be tested for DNA. That testing resulted in a finding of sperm matching Windon's DNA profile and a non-sperm fraction matching the victim's DNA. The forensic scientist would explain that the two DNAs were in the same sample.

At trial, the victim expressed no animosity towards Windon, expressly disclaiming any kind of anger to the extent it was perceived that he was taking advantage of her grandparents.[3] Moreover, the victim conveyed that she had no problem with him doing drugs.

Of most importance to the present appeal was an exchange that took place during trial counsel's opening statement. There, counsel was in the process of telling the jury that the victim had been over at her other grandmother's house and in the company of a friend. Upon returning from this other house, which happened a few days prior to the events underpinning this case, she asked if her grandmother, the one relevant here, could obtain a morning-after pill for her, but was denied for financial reasons. Trial counsel was unable to finish the word "pill" before the Commonwealth objected, asserting that such a statement, as it implicated sexual intercourse, fell under the auspice of the RSL and therefore required a prior written motion as well as an evidentiary hearing.

Trial counsel did not believe such a statement fell under the RSL, but instead provided indicia that, having been denied access to a morning-after pill, the victim realized a rape claim could become a pathway to obtain such a pill and formed a way to "get back" at her family. This information would be adduced, chiefly, through the victim's grandmother. At this juncture, the court

---

[3] The victim's second cousin would testify that the victim was embarrassed by Windon and that she believed Windon was exploiting her grandparents. *See* N.T., 9/25/19, at 468-69.

did not let in any statement identifying a morning-after pill, finding that such a statement was connected to the RSL and that a pretrial hearing should have been sought.

Later on at trial, while the victim was on the stand, the court revisited the interplay between the morning-after pill and RSL. The court, relying on this Court's decision in **Commonwealth v. Black**, 487 A.2d 396 (Pa. Super. 1985) (*en banc*), conducted a hearing, out of the presence of the jury, to weigh whether evidence of the victim asking for a morning-after pill should be admitted, despite the prior ruling.

Counsel reiterated that the victim asking for a morning-after pill prior to the interaction with Windon gave her the subsequent impetus to fabricate the rape and ultimately receive the pill as a component of the sexual assault forensic exam. However, the court noted the close temporal connection between the victim's stated timing of the rape and when she researched on the internet what she was supposed to do in the event she had been raped. The Commonwealth remained steadfast in its position that the victim's prior desire for a morning-after pill was encompassed by the RSL, so it maintained its objection that trial counsel failed to properly present this issue to the court for adjudication.

When asked, the victim did not remember what, specifically, her search results yielded when she was seeking information on having been raped. As mentioned earlier, the victim did not know what a sexual assault forensic exam would entail or whether that exam would mean that she would receive

a morning-after pill. The victim further expressed that she never asked her grandmother for a morning-after pill.

After taking everything into account, the court concluded:

Okay, look, is the evidence relevant to show bias or motive? If the evidence presented to the trier of fact is as it's purported to be or as per the proffer of [trial counsel], it could go to motive.

But the second part – That doesn't end the inquiry. The second question is whether the probative value of the evidence outweighs its prejudicial effect. I think it has only – If it has any probative value, I don't think it is compelling in the sense that the only – there's speculation that this complainant even knew that she might be able to obtain a morning after pill through a [sexual assault forensic] exam.

She indicates that she doesn't remember. Apparently there's no evidence as to what the results of her search inquiry on the internet was, but there is evidence that what she inquired was what she should do – what should I do if I've been raped.

It strikes me that if she was – if her interest was in obtaining a morning[-]after pill, the inquiry would have been how do I get a morning after pill, not what should I do if I've been raped.

So I think it has – I'm not going to say it has no probative value, but I think it doesn't have great probative value. And let's understand that the timeline that I'm using here is the alleged incident occurred.

Within hours thereafter, a diary entry was made by the complainant memorializing the incident, and it was only thereafter that there was an internet search or query, but the query wasn't how do I get a morning after pill, the query is what should I do if I've been raped.

So I think the probative value is speculative at best. Frankly, I think the prejudicial effect of the jury hearing this or the trier of fact hearing this is great. I think morning after pills, it's an abortive. It's in and of itself controversial for many people. It tends to hint, if you will, at the complainant's alleged sexual

activity.

Clearly while it does not – while it's the – while it does not prove prior sexual conduct, which the Rape Shield [L]aw addresses, it does implicate or suggest prior sexual conduct. And the whole point of the Rape Shield [L]aw is to avoid shifting a rape trial from whether or not the rape occurred to what kind of person the complainant is.

The suggestion that she was seeking a morning[-]after pill in and of itself is controversial if only because of the strong beliefs, both pro and con, that people have regarding abortions and also because it intimates, if you will, prior sexual conduct.

So I think – Frankly, I think the prejudicial effect of allowing this evidence in far outweighs what I think is only potentially probative value, and certainly it's not exculpatory by any means.

And … [trial counsel] indicated to the jury that he intends to suggest through evidence that the complainant had one or more motives to fabricate.

So given all those circumstances, I'm going to affirm my original decision not to allow the evidence regarding the alleged – the allegation that the complainant was seeking a morning[-]after pill to be introduced.

N.T., 9/23/19, at 145-47.

At the end of trial, the jury found Windon guilty of rape by forcible compulsion, statutory sexual assault, involuntary deviate sexual intercourse by forcible compulsion, involuntary deviate sexual intercourse, incest of a minor, indecent assault, and corruption of minors.[4] Windon received an aggregate sentence of ten to twenty years of incarceration.

---

[4] ***See*** 18 Pa.C.S.A. § 3121(a)(1); 18 Pa.C.S.A. § 3122.1(b); 18 Pa.C.S.A. § 3123(a)(1); 18 Pa.C.S.A. § 3123(1)(7); 18 Pa.C.S.A. § 4302(b)(2); 18 Pa.C.S.A. § 3126(a)(8); 18 Pa.C.S.A. § 6301(a)(1)(i), respectively.

Thereafter, trial counsel filed an untimely notice of appeal. Upon seeking PCRA relief, Windon's direct appeal rights were eventually reinstated. However, Windon discontinued his direct appeal under the belief that his sole issue that he intended to raise was exclusively cognizable under the PCRA. Resultantly, Windon filed a PCRA petition, which was found to be unmeritorious. As such, the court denied Windon PCRA relief following the filing of its notice of its intent to dismiss.

PCRA counsel filed a timely notice of appeal, and the relevant parties have complied with their respective obligations under Pennsylvania Rule of Appellate Procedure 1925. Consequently, the appeal is ripe for review.

In his appeal, Windon presents one issue for our consideration:

1. Did the PCRA court err in denying his petition where counsel was ineffective for failing to file a motion to pierce the RSP when the evidence of the victim's morning-after pill was central to the defense's theory that she fabricated the claims of sexual abuse?

*See* Appellant's Brief, at 4.

The standard we employ when reviewing an order denying PCRA relief requires a determination as to whether the PCRA court's decision is supported by the evidence of record and is free from legal error. **See Commonwealth v. Jarosz**, 152 A.3d 344, 350 (Pa. Super. 2016). While this Court is very deferential to the PCRA court's findings if the record contains *any* support for those findings, **see Commonwealth v. Anderson**, 955 A.2d 1184, 1189 (Pa. Super. 2010), "we afford no such deference to its legal conclusions. Where

the petitioner raises questions of law, our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Benner***, 147 A.3d 915, 919 (Pa. Super. 2016) (citation omitted).

Windon's singular assertion contends that his counsel was ineffective, predicated on the notion that his trial counsel failed to file a pre-trial motion under the RSL seeking admittance of the victim's alleged desire to obtain a morning-after pill prior to her reported rape.

To start, this Court presumes counsel's effectiveness. ***See Commonwealth v. Rivera***, 10 A.3d 1276, 1279 (Pa. Super. 2010). To defeat this presumption, a petitioner must plead and prove: (1) merit to his or her underlying claim; (2) that counsel lacked any sort of reasonable basis for his complained-of act or omission; and (3) that the petitioner suffered actual prejudice as a result. ***See Commonwealth v. Treiber***, 121 A.3d 435, 445 (Pa. 2015). The prejudice component requires consideration of whether "there is a reasonable probability that, but for counsel's error or omission, the result of the proceeding would have been different." ***Commonwealth v. Koehler***, 36 A.3d 121, 132 (Pa. 2012) (citation omitted). If the petitioner fails to meet any one of these three prongs, his or her claim automatically fails. ***See Jarosz***, 152 A.3d at 350.

Subject to a prosecution on an enumerated list of offenses, the RSL bars the admissibility of evidence related to "specific instances of the alleged victim's past sexual conduct, past sexual victimization, allegations of past

sexual victimization, opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past sexual conduct." 18 Pa.C.S.A. § 3104(a). While the Law's purpose is "to prevent the trial from shifting its focus from the defendant's guilt or innocence to the victim's reputation or moral virtue," **Commonwealth v. Rogers**, 250 A.3d 1209, 1212 (Pa. 2021), such an intention is balanced against a defendant's right to a fair trial, which necessarily includes that defendant's right to conduct reasonable cross-examination of witnesses and to present evidence. **See id**., at 1216-17. Therefore, if a defendant attempts to present evidence unrelated to impugning a complainant's character, such as to demonstrate bias, hostility, or that he or she had a motive to fabricate, *and* the probative value of that evidence outweighs the danger of any kind of unfair prejudice, then the RSL cannot prohibit the admission of such evidence. **See id**., at 1217-18.

To pierce the RSL, a defendant must "file a written motion and offer proof at the time of trial." 18 Pa.C.S.A. § 3104(b), **see also Commonwealth v. Burns**, 968 A.2d 684, 690-91 (Pa. Super. 2009) (*en banc*) (indicating this Court's repeated emphasis on a defendant following these precepts. Otherwise, a failure to file a written motion or make a specific offer of proof either bars appellate review or generates no abuse of discretion in a trial court's adverse ruling) (citations omitted). "If, at the time of trial, the court determines that the motion and offer of proof are sufficient on their faces, the court shall order an in[-]camera hearing and shall make findings on the record

as to the relevance and admissibility of the proposed evidence[.]" 18 Pa.C.S.A. § 3104(b).

Here, trial counsel did not file a pre-trial motion even though it intended to introduce evidence that implicated the victim's sexual activity. ***See, e.g., Commonwealth v. Weber***, 701 A.2d 531, 534 (Pa. 1997) (identifying that the RSL applies to evidence related to a victim's abortion, as such an event necessarily constitutes past sexual conduct). Despite this deficiency, the trial court conducted a hearing, without the jury's presence, on trial counsel's desire to admit evidence related to the victim's desire for the morning-after pill.

At that hearing, trial counsel adamantly asserted that evidence of the victim asking for, and then not receiving, the morning-after pill caused her to concoct allegations against Windon, given that she would receive the pill during her sexual assault forensic examination. ***See*** Appellant's Brief, at 27. On appeal, however, Windon concedes that "the defense was still able to challenge [the victim's] credibility in other ways." ***Id***.

Windon has not produced any authority directly analogous to the situation presently before the Court. In summation: trial counsel failed to file an RSL motion; over the Commonwealth's objection, trial counsel discretely described what he intended to introduce at trial and presented a proffer to the court as to why it should be allowed; the court proceeded to fully adjudicate the merits of whether the morning-after pill testimony should be admitted;

the court, placing its reasons on the record, concluded that the likelihood of prejudice to the victim far outweighed any possible benefit to Windon; Windon's direct appeal was abandoned; and now, in the PCRA domain, Windon raises an ineffective assistance of counsel claim stemming from his trial counsel not filing the RSL motion.

In tackling the first ineffectiveness prong and to establish that his underlying contention has merit, Windon claims "[t]he prejudicial effect of the evidence … would have been minimal." *Id*., at 28. Windon bolsters this averment by broadly arguing that admission of such information: (1) would not have attacked the victim's character; (2) would have allowed him to properly defend his case and present a complete defense, as it would have allowed him to develop the premise that the victim fabricated the story; (3) would have given him the ability to confront his accuser on this issue via cross-examination. *See id*., at 28-30. Windon believes the morning-after pill narrative "would have resonated … deeply with the jury," *id*., at 30, and served to complement the line of evidence establishing that the victim wanted Windon out of the house. *See id*.

Reproduced in full, *supra*, the trial court went into great detail weighing RSL-related considerations. The court mentioned that the morning-after pill evidence could establish *some* level of the victim's motive, having potentially probative value, but then the court proceeded to consider the "great" prejudicial effect it would have should such information be admitted. The court

further noted the controversial nature of abortions.

At the in-camera RSL hearing, a trial court is to determine: "(1) whether the proposed evidence is relevant to show bias or motive or to attack credibility; (2) whether the probative value of the evidence outweighs its prejudicial effect; and (3) whether there are alternative means of proving bias or motive or to challenge credibility." **Commonwealth v. Black**, 487 A.2d 396, 401 (Pa. Super. 1985) (*en banc*). As to the second consideration, logically relevant evidence may be excluded if it "would so inflame the minds of the jurors that its probative value is outweighed by unfair prejudice." **Id**. (citation omitted).

After a thorough review of Windon's brief, we are simply unable to conclude that he has met his burden in establishing that his underlying issue has merit. Although he has provided this Court with a well-defined overview of the RSL and our corresponding application of that Law, Windon has neither tethered his authority to the specific facts of this case nor the conclusions that the trial court reached when it conducted its hearing.

Windon suggests that the prejudicial effect of admitting evidence of a fourteen-year-old's alleged statement requesting a morning-pill would have been minimal, but has not cited to any similar or on-point authority for such a proposition. Instead, he conclusorily, and without further elaboration, posits that such an admission would not have suggested any general moral turpitude or defect of the victim. Assuming, *arguendo*, that the morning-after pill

evidence had probative value, as it would have conceivably allowed Windon to present a more complete defense as to the victim's possible motive and given him the ability to cross-examine the victim on this specific point, that benefit to Windon does not obviate the need for its probative value to be greater than its attendant prejudice.

In the absence of any kind of precise refutation serving to contradict the extent the evidence was prejudicial toward the victim or any authority, juxtaposed against a similar set of facts, demonstrating that the probative value exceeded any prejudice the victim would inevitably inure, we are constrained to conclude that Windon's underlying issue lacks merit. ***See Commonwealth v. Largaespada***, 184 A.3d 1002, 1006 (Pa. Super. 2018) (remarking that the RSL's purpose is "to prevent a trial from shifting its focus from the culpability of the accused toward the virtue and chastity of the victim.") (citation omitted); ***see also Commonwealth v. Guy***, 686 A.2d 397, 402 (Pa. Super. 1996) ("Regardless of whether [an appellant's] proffer is accurate, the victim must not be made to suffer such prejudice, ridicule and humiliation in payment for past indiscretions.").

Accordingly, as Windon has failed to establish the first prong of the ineffective assistance of counsel test, his issue necessarily fails. Therefore, we affirm the order dismissing his PCRA petition.

Order affirmed.

- 14 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/04/2022