**Commonwealth v. Dabney**

*Christopher M. Maloney, assistant district attorney,* for Commonwealth.

*William I. English Jr.* and *Timothy Peterwile,* for defendant.

HODGSON, *P.J.,* October 28, 2008—Appellant, McKay Dwayne Dabney, appeals to the Superior Court of Pennsylvania from the judgment of sentence entered on August 25, 2008.

## FACTS AND PROCEDURAL HISTORY

The instant case arises from a series of events that occurred on May 28, 2007. On that date, at approximately 4:02 a.m., a call was received by the Cheltenham Township Police Department reporting a rape. Upon arriving at the scene, police officers found a 26-year-old female lying on the floor of a neighboring residence. The

female victim stated that she had been raped by a man whom she knew as "Ears," at an apartment located at 7876 Spring Avenue. While outside securing the scene, Office Brian Hopkins and Officer John Barr of the Cheltenham Township Police Department, observed the appellant, McKay Dwayne Dabney, exit an apartment building located at 7876 Spring Avenue and walk in their direction.

Upon approaching the officers, appellant stated that he was looking for his female friend who had been sleeping at his apartment. He was alarmed because not only was the young woman missing, but there was also fresh blood on his sheets. The name of appellant's missing friend closely matched the name of the victim, who ultimately identified appellant as the man who raped her. Appellant was arrested on the scene and taken to the Cheltenham Township Police Department. While in transit to the station, appellant admitted to having sex with the victim. He further disclosed to the officers that the blood on his sheets belonged to the victim who was a virgin.

Appellant remained in a cell at the Cheltenham Township Police Station until 11:30 a.m. at which time he was brought out and asked to sign a Constitutional Rights Form, which he did. Thereafter, he gave a five-page statement which also included a written version of his *Miranda* rights. After a thorough investigation, appellant was ultimately charged with rape, aggravated indecent assault—lack of consent and aggravated indecent assault—forcible compulsion.

On October 22, 2007, appellant brought a motion to suppress his statement. On November 2, 2007, this court

denied appellant's motion, finding that his statement had been knowingly, intelligently and voluntarily made, as it was neither a product of coercion nor inducement. Furthermore, this court found that the statement was not the product of an illegal delay between arrest and arraignment since the police were in the process of appropriate investigative procedures prior to the taking of the statement, the performance of which did not cause any undue delay. See *Commonwealth v. Perez,* 577 Pa. 360, 845 A.2d 779 (2004).

A four-day jury trial commenced on February 26, 2008. On February 29, 2008, the jury returned a guilty verdict on the charge of aggravated indecent assault—lack of consent. Thereafter, on March 26, 2008, appellant filed a motion for extraordinary relief in the form of a new trial, which this court subsequently denied on March 28, 2008. Sentencing commenced on August 25, 2008, at which point, appellant was sentenced to undergo a term of imprisonment of 10 to 23 months. On September 12, 2008, appellant appealed to the Pennsylvania Superior Court from the judgment of sentence and filed a concise statement of matters complained of with this court on September 24, 2008 in accordance with Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure.

## LEGAL DISCUSSION

Appellant raises four issues on appeal. First, appellant contends that his statement should have been suppressed because it was not knowingly, intelligently and voluntarily given. Second, appellant argues that Assistant District Attorney Christopher Maloney was guilty of

prosecutorial misconduct. Specifically, appellant avers that Maloney, on cross-examination, improperly referred to appellant as having raped the alleged victim when no rape had been established. It is appellant's contention that this characterization unduly prejudiced the jury and entitles him to a new trial. Additionally, appellant argues that the jury's guilty verdict was against the weight of the evidence. Finally, appellant asserts that this court misinterpreted the rape shield statute, 18 Pa.C.S. §3104, when it denied his motion to introduce evidence of prior sexual encounters between himself and the alleged victim.

Regarding appellant's first argument, it is an elemental principle of Pennsylvania constitutional law that a criminal defendant is deprived of due process if his conviction is founded, in whole or in part, upon a confession that is involuntarily given. Thus, evidentiary use of a confession by one accused of the commission of a crime is constitutionally prohibited unless the Commonwealth is able to prove that the statement was knowing, intelligent and voluntary. *Commonwealth v. Jones,* 758 A.2d 228 (Pa. Super. 2000).

In the case before this court, appellant argues that his statement was not knowingly, intelligently and voluntarily given. He claims that he was exhausted at the time the statement was provided to police, as he had been awake for at least 24 hours prior. Furthermore, he had been confined, incarcerated and isolated for a significant period of time prior to the administration of questioning. Lastly, appellant argues that the statement misled the jury as it did not accurately reflect the questions posed and the answers provided. The totality of these facts, leads

appellant to conclude that his statement should have been suppressed.

In *Commonwealth v. Ellis,* 700 A.2d 948 (Pa. Super. 1997), the Pennsylvania Superior Court held that before an individual may be subjected to custodial interrogation, he or she must make a knowing and intelligent waiver of his or her privilege against self-incrimination and the right to counsel. This waiver must follow an administration of adequate warnings as to those rights. *Id.* To determine whether a waiver of the privilege against self-incrimination or the right to counsel was knowing and intelligent, the court focuses upon the defendant's cognitive processes and whether the defendant was aware of the nature of his choice to relinquish his *Miranda* rights. *Id.* Additionally, in determining whether a waiver is voluntary, the court must ascertain whether it was the result of an intentional choice that was not subjected to undue governmental pressure. *Id.*

The interview in question was conducted at the Cheltenham Township Police Department in the detective suite. When Detective Shaffer first made contact with appellant at approximately 11:30 a.m., appellant was lucid and cooperative. He informed Detective Shaffer that he had graduated from high school and was able to read, write and understand the English language. Appellant was advised of his constitutional rights both orally and in writing.[1] Further, he signed a Constitutional Rights

---

1. Although appellant presently contends that his statement was involuntary, on cross-examination he admitted that he received and understood the rights that he was relinquishing. The pertinent testimony is as follows:

Form acknowledging that he understood his rights and wished to relinquish them. Before beginning the interview, Detective Shaffer read appellant his rights again. Appellant concededly admits that he understood his rights at the time he made the statement to the police.[2] The interview lasted approximately two hours, concluding at 1:30 p.m. There were no threats made or coercion exerted by either Detective Shaffer or Detective Hall during the course of the interview. Furthermore, appellant was given an opportunity to review the statement and made no corrections. He signed the last page of the five-page statement acknowledging that he had carefully reviewed it and that the information contained therein was accurate. If the statement contained any inaccuracies or ambiguities, appellant should have made the necessary corrections at that time; however, he failed to do so. Furthermore, even though appellant maintains that he did not sign the statement until 12 hours after it was given, there is no evidentiary support for this contention.

Although seven hours had elapsed between appellant's arrest and the initiation of his interview, nothing in the record indicates that this delay was "aimed at overcom-

---

"Q: You were informed of your rights prior to giving that statement, correct?

"A: When I gave my statement, I was informed of my *Miranda* rights, yes, but I wanted to tell the truth. I wanted to tell my side of the story, no questions about it.

"Q: I'm just bringing up the fact that you were properly informed of your rights. You voluntarily chose to waive those rights and gave a statement, right?

"A: Yes I did." (N/T, trial by jury, 2/28/2008 at 44.)

2. See (N/T, suppression hearing, 10/22/2007 at 53).

ing appellant's will, or that he was subjected to coercive tactics." *Commonwealth v. Perez,* 577 Pa. 360, 376, 845 A.2d 779, 789 (2004). The Pennsylvania Supreme Court held in *Perez* that:

"[A] voluntary statement[] by an accused given more than six hours after arrest when the accused has not been arraigned, are no longer inadmissible per se. Rather, in determining the admissibility of all statements, regardless of the time of their making, courts must consider the totality of the circumstances surrounding the confession." *Id.* at 373, 845 A.2d at 787. (footnote omitted)

Although interviewing in this case commenced before appellant was formally arraigned, the totality of the circumstances surrounding the interview suggests that appellant understood the constitutional rights that were given to him, and knowingly, intelligently and voluntarily chose to give a subsequent statement. Furthermore, the delay between arrest and arraignment resulted from appropriate investigative procedures that were necessary for police to adequately prepare for appellant's interview. At the suppression hearing, Sergeant Shaffer explained that the seven-hour delay was attributable to "reading statements from the officers, speaking to the officers and speaking to witnesses." (N/T, suppression hearing, 10/22/07 at 8.) As there is nothing in the record to indicate that appellant's statement was in any way induced, coerced or the product of any undue delay, the statement was voluntarily made and properly admitted.

Regarding appellant's second argument, Assistant District Attorney Christopher Maloney was not guilty of prosecutorial misconduct. The grounds for prosecuto-

rial misconduct are well established. Any acerbic, unprofessional or otherwise improper remarks by the Commonwealth are not necessarily grounds for a new trial. A claim of prosecutorial misconduct will constitute grounds for relief, however, when the unavoidable effect of the contested comment was to "prejudice the jury, forming in their minds fixed bias and hostility towards the accused so as to hinder an objective weighing of the evidence and impede the rendering of a true verdict." *Commonwealth v. Ragan,* 538 Pa. 2, 24, 645 A.2d 811, 822 (1994), citing *Commonwealth v. Chester,* 526 Pa. 578, 599, 587 A.2d 1367, 1377 (1991).

In the case before this court, the allegedly improper question was posed by the Commonwealth during appellant's cross-examination. Specifically, the prosecutor asked appellant: "Because at that point, based on the fact that you had just raped her, you suspected that she may be stooped down upset and sheltering herself because she was depressed, correct?" (N/T, trial by jury, 3/28/2008 at 76.) Appellant argues that this comment constituted prosecutorial misconduct and unduly prejudiced the jury. In *Commonwealth v. Dozier,* 294 Pa. Super. 249, 439 A.2d 1185 (1982), the Pennsylvania Superior Court rejected the defendant's argument that the prosecutor's use of the word "rapist" during closing argument was improper. More particularly, the court found that since the defendant was being tried for rape, the prosecutor's use of the word "rapist" was not error, nor was it improper, given the nature of defense counsel's previous attack on the victim's truthfulness. *Id.*

Similarly, Commonwealth's characterization of appellant as having "raped her" was not improper given that

this was the exact crime appellant was on trial for and given the nature of appellant's repeated attacks on the victim's credibility. A prosecutor is permitted after all, to vigorously argue his case so long as his comments are supported by evidence and contain inferences which are reasonably derived from that evidence. *Commonwealth v. Hardcastle,* 519 Pa. 236, 254, 546 A.2d 1101, 1109 (1988). Additionally, as the comment was made on cross-examination, as opposed to being made during closing argument, appellant had the opportunity to directly refute the statement, which he did by responding, "First of all I never raped her. And I feel as some kind of way that you are saying that I raped her. I never raped her, okay?" (N/T, trial by jury, 3/28/2008 at 76.) The jury was not prejudiced by the comments as evidenced by its return of a not-guilty verdict on the charge of rape. Finally, any complaints appellant had regarding such characterizations should have been raised at trial in the form of defense objection, however, no objections were made by defense counsel. As the Pennsylvania Supreme Court has often said, "A party may not remain silent and take chances on a verdict and afterwards complain of matters which, if erroneous, the court would have corrected." *Commonwealth v. Clair,* 458 Pa. 418, 423, 326 A.2d 272, 274 (1974) citing *Commonwealth v. Marlin,* 452 Pa. 380, 382, 305 A.2d 14, 16 (1973).

Addressing appellant's third argument, the jury's verdict, finding appellant guilty of aggravated indecent assault—lack of consent, was not against the weight of the evidence. Aggravated indecent assault is defined in 18 Pa.C.S. §3125, which reads as follows:

"(a) Except as provided in sections 3121 (relating to rape), 3122.1 (relating to statutory sexual assault), 3123 (relating to involuntary deviate sexual intercourse) and 3124.1 (relating to sexual assault), a person who engages in the penetration, however slight of the genitals or anus of a complainant with a part of the person's body for any purpose other than good faith medical, hygienic or law enforcement procedures commits aggravated indecent assault if:

"(1) the person does so without the complainant's consent;

"(2) the person does so by forcible compulsion;

"(3) the person does so by threat of forcible compulsion that would prevent resistance by a person of reasonable resolution;

"(4) the complainant is unconscious or the person knows that the complainant is unaware that the penetration is occurring;

"(5) the person has substantially impaired the complainant's power to appraise or control his or her conduct by administering or employing without the knowledge of the complainant drugs, intoxicants or other means for the purpose of preventing resistance;

"(6) the complainant suffers from a mental disability which renders him or her incapable of consent;

"(7) the complainant is less than 13 years of age; or the complainant is less than 16 years of age and the person is four or more years older than the complainant and the complainant and the person are not married to each other."

Appellant argues that the jury's verdict, finding him guilty of aggravated indecent assault—no consent, was against the weight of the evidence for the following reasons: there was no evidence that the alleged victim was intoxicated; there was no evidence that the alleged victim was mentally impaired; and there was no evidence that the alleged victim was under the age of 16 years at the time of the alleged assault. Appellant contends that the verdict's lack of evidentiary support entitles him to a new trial.

In *Commonwealth v. Filer,* 846 A.2d 139, 140 (Pa. Super. 2004), the Pennsylvania Superior Court articulated the standard applied in reviewing the sufficiency of the evidence. The court stated the following: "The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." In the case before this court, there was enough evidence admitted at trial to enable the jury to find every element of the crime beyond a reasonable doubt.

Appellant's summation of the elemental principles of section 3125, enumerated above, is too narrow. Although the statute extends criminal liability to situations where there is evidence of intoxication, mental impairment or infancy, the statute is broader than these three instances. Accordingly, the jury was properly instructed of the following:

"In order to find the defendant guilty of that offense, (aggravated indecent assault—no consent), you must find

the following elements have been proven beyond a reasonable doubt: First, that the defendant penetrated however slightly the genitals of Shakia Williamson with one of his body parts; second, that the defendant did not do so for a good-faith medical, hygienic, or law enforcement-procedure purpose; third, that the defendant penetrated the other person's genitals without her consent; and fourth, that the defendant acted knowingly or at least recklessly regarding the other person's non-consent."[3] (N/T, trial by jury, 2/29/2008 at 309.)

Here, there was evidence to prove beyond a reasonable doubt, that appellant penetrated the victim's genitals without her consent. On direct examination, the victim, Ms. Williamson testified to this fact,[4] an account which was circumstantially corroborated by numerous Commonwealth witnesses. Furthermore, there was evidence

---

3. This court offered further elaboration on the mens rea element stating the following: "What do I mean by the requirement of the fourth element, that the defendant acted knowingly or at least recklessly? The defendant acts recklessly with regard to an alleged victim's non-consent if he consciously disregards a substantial and unjustifiable risk that the victim is not consenting to the penetration. The risk disregarded must be the sort of risk that is grossly unreasonable for the defendant to disregard." (N/T, trial by jury, 2/29/2008 at 209-210.)

4. The pertinent part of Ms. Williamson's testimony is as follows:
"A: At that time, I was still laying there and just asking him to 'Stop. Don't do this.' And he proceeded to get on top of me and force himself on me.

"Q: And, sorry, but you have to be specific when you say he forced himself on you.

"A: Penetration.

"Q: Penetration of what area of your body?

"A: My vagina.

"Q: By what part of his body?

"A: His penis." (N/T, trial by jury, 2/27/2008 at 79.)

to prove that appellant acted knowingly or at least recklessly regarding the victim's non-consent. Specifically, Ms. Williamson testified that she repeatedly pleaded with appellant to "Please don't do this. Please stop." (N/T, trial by jury, 2/27/2008 at 79.) As such, there was sufficient evidence to support appellant's conviction for aggravated indecent assault—no consent.

Finally, appellant argues that this court committed reversible error when it denied his motion to pierce the rape shield. Specifically, appellant asserts that he should have been permitted to introduce into evidence the prior sexual history between himself and the alleged victim. Pursuant to Pennsylvania's Rape Shield Law, 18 Pa.C.S. §3104, evidence of past sexual conduct, if relevant to show bias against the defendant or to attack the credibility of the victim, is admissible as long as it would not inflame the minds of the jurors to the point that its probative value is outweighed by the danger of unfair prejudice. The purpose of Pennsylvania's Rape Shield Law is to prevent a sexual assault trial from denigrating into an attack upon the victim's reputation for chastity. *Commonwealth v. Killen,* 545 Pa. 127, 680 A.2d 851 (1996).

In the case before this court, appellant contends that he should have been able to introduce testimony that he and the victim had a history of engaging in consensual oral sex with one another. Furthermore, appellant avers that he should have been permitted to submit a report by Detective Ronald Cupo of the Cheltenham Township Police Department, wherein the victim admitted to having oral sex with appellant on one prior occasion. Appellant failed, however, to supply the Commonwealth with proper notice of such allegations as required by

section 3103(b), which requires a defendant to file a written motion and offer of proof at the time of trial. In the instant case, by the time appellant raised this issue, the trial had already commenced, opening arguments had concluded and the Commonwealth was in the middle of presenting its case. It was only at the start of the second day of trial that appellant formally raised this motion. Even at that time, no request in writing was presented. Although a written motion was eventually filed, it came too late.

Furthermore, proffers of evidence relating to past sexual conduct of the alleged victim under the Rape Shield Law cannot be vague, conjectural or speculative. *Commonwealth v. Fink,* 791 A.2d 1235 (Pa. Super. 2002). The Commonwealth was right in its contention that appellant should not have been permitted to testify to "alleged events that happened in the past that have no indicia of reliability that can't be corroborated or confirmed." (N/T, trial by jury, 2/27/2008 at 6.)

## CONCLUSION

Upon consideration of the foregoing discussion, the undersigned respectfully submits that the defendant's conviction and sentence should be affirmed.