J-A08040-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
                                              :         PENNSYLVANIA
                                              :
              v.                              :
                                              :
                                              :
                                              :
DAVID CARDONA                          :
                                              :
              Appellant                      :    No. 1654 EDA 2018

Appeal from the Judgment of Sentence Entered April 9, 2018
In the Court of Common Pleas of Delaware County Criminal Division at
No(s):  CP-23-CR-0000176-2017

BEFORE:  LAZARUS, J., KUNSELMAN, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:                          **FILED MAY 20, 2020**

David Cardona (Appellant) appeals from the judgment of sentence entered in the Delaware County Court of Common Pleas, following his jury convictions of rape, indecent assault, and corruption of minors.[1]  Appellant raises seven issues, relating to evidentiary rulings, an alleged ***Brady***[2] violation, the sequestration of witnesses, the jury instructions, and the weight of the evidence.  We affirm.

---

[1] 18 Pa.C.S. §§ 3121(a)(1) (rape by forcible compulsion), 3126(a)(2) (indecent assault by forcible compulsion), 6301(a)(1)(i) (corruption of minors).

[2] ***Brady v. Maryland***, 373 U.S. 83 (1963).  ***See Commonwealth v. Ovalles***, 144 A.3d 957, 965 (Pa. Super. 2016) (prosecutor has obligation to disclose all exculpatory information material to guilt or punishment of accused).

The minor victim (Victim) in this matter testified at trial to the following. In March of 2016, when she was 13 years old, she was spending the night at Appellant's home in Chester, Pennsylvania. Appellant "was a close family friend," and Victim's family considered him an uncle to Victim.[3] Trial Ct. Op., 7/30/19, at 2. Also present were Victim's younger sister (Sister), as well as Appellant's two daughters. The trial court summarized:

> [Appellant] told [S]ister and his [older] daughter to go upstairs. He told them that they were not allowed to come downstairs until he told them they could.
>
> [Victim] went into the kitchen . . . and [Appellant] entered, turning the kitchen lights off. He grabbed [Victim's] arms from behind and bent her over, then pulled [Victim's] pants down and forcibly penetrated her [vagina]. He told her to put her hands on the sink, and she did. She was too afraid to resist, thinking he might get abusive. She attempted to [lift herself up but was pushed] back down. She was crying but didn't call out [because she did not want her sister to see what was happening. Appellant] then released her[, and Victim] went into the upstairs bathroom.

Trial Ct. Op. at 2-3 (record citations omitted); ***see also*** N.T. Trial, 1/17/18, at 46-49, 51. There was "blood all over" Victim's underwear, and she took a shower. N.T., 1/17/18, at 50. Victim then put her underwear in a bag and threw it in a trashcan outside. ***Id.*** at 51. When Appellant's wife arrived home, everyone watched a movie together. The next morning, Appellant drove Victim home and told her, "[M]ake sure you don't tell anybody because I can lose my kids and my family." ***Id.*** at 52. Thereafter, Appellant "kept coming"

---

[3] At trial, Victim's mother testified Appellant was her cousin. N.T. Trial, 1/17/18, at 173.

- 2 -

to Victim's house and asked her whether she told her parents, and whether she "want[ed] to do it again." *Id.* at 53, 55.

Victim testified this incident caused her stress. N.T., 1/17/18, at 57. In November of 2016,[4] Victim was at home with her family and "was so angry." *Id.* She went into the bathroom and held a knife to her neck. *Id.* Her mother asked Victim, "[W]hat's wrong because [she had not] been acting [like her]self lately," and Victim told her about the incident with Appellant, because Victim "couldn't hold the pressure anymore." *Id.* at 56-57.

The trial court summarized that the next day,

> November 4, 2016, [Victim] went to DuPont Childrens Hospital, and was treated for rape by [pediatric] Forensic Nurse Christina Lynch. [Nurse] Lynch was unable to do a rape kit since it had passed the six month mark but was treating her for possible sexually transmitted diseases.

Trial Ct. Op. at 3 (record citations omitted). At the hospital, Victim also gave a statement to Chester Police Officer Joshua Dewees. N.T., 1/17/18, at 205-06.

This case proceeded to a jury trial commencing January 16, 2018. Victim testified as summarized above. The Commonwealth also called to testify Victim's mother and sister, Nurse Lynch, and Officer Dewees. Appellant did not testify, but called his wife to testify. The jury found Appellant guilty of rape, indecent assault, and corruption of minors.

---

[4] *See* N.T., 1/17/18, at 174 (Mother's testimony as to when this conversation occurred).

On April 9, 2018, the trial court imposed a sentence of 70 to 140 months' incarceration for rape and a consecutive five years' probation for corruption of minors. Appellant filed a timely post-sentence motion, which was denied on May 4th. Appellant took this timely appeal and complied with the court's order to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

Appellant presents the following issues for our review:

1. Whether the trial court erred in allowing the nurse, over the objections of defense counsel, to testify as to impermissible hearsay under **Com. v. Smith**, 681 A.2d 1288 (Pa. 1996).

2. Whether the trial, through failure to memorialize investigatory information, violated **Brady** and caused extreme prejudice to [Appellant].

3. Whether the trial court erred in conduct with witnesses including not sequestering them from each other and in allowing mid-trial conferences with a professional witness.

4. Whether the trial court erred in not allowing evidence of the alleged victim's mental health diagnoses to be investigated or presented, as well as in violation of the [C]onfrontation [C]lause, as it was critical information to judg[ ]ment of ability to tell or know the truth.

5. Whether the trial court erred in not allowing the Facebook posts as a **Killen**[5]-type statement.

6. Whether the trial court erred in not instructing the jury as to failure to produce documents or evidence and as to impeachment of a witness.

---

[5] **Commonwealth v. Killen**, 680 A.2d 851, 854 (Pa. 1996) (complainant's "sexually provocative" statements made to third person after alleged sexual assault were not subject to Rape Shield Law and were admissible to assist jury in assessing complainant's credibility in determining whether she was victim of sexual assault).

7. Whether the trial verdict is against the weight of the evidence.

Appellant's Brief at 10.

Preliminarily, we remind counsel of the "much quoted" article by the Honorable Ruggero Aldisert of the federal Third Circuit Court of Appeals:

> With a decade and a half of federal appellate court experience behind me, I can say that even when we reverse a trial court it is rare that a brief successfully demonstrates that the trial court committed more than one or two reversible errors. I have said in open court that when I read an appellant's brief that contains ten or twelve points, a presumption arises that there is no merit to **any** of them . . . [and] it is [this] presumption . . . that reduces the effectiveness of appellate advocacy.

***Commonwealth v. Robinson***, 864 A.2d 460, 479 n.28 (Pa. 2004), *quoting* Aldisert, Ruggero, *The Appellate Bar: Professional Competence and Professional Responsibility — A View from the Jaundiced Eye of the Appellate Judge*, 11 CAP. U. L. REV. 445, 458 (1982).

We also note with displeasure that Appellant's arguments generally do not acknowledge, let alone discuss, the trial court's opinion addressing his issues. To this end, we further remind counsel that this Court is "an error correcting court," and thus, at least with respect to the particular claims raised in this appeal, our duty is to review the decisions of the trial court, and not, as Appellant's presentation would require, undertake *de novo* review of his claims. **See Commonwealth v. Snyder**, 60 A.3d 165, 178 (Pa. Super. 2013) (citation omitted).

In Appellant's first issue, he avers the trial court erred in allowing Nurse Lynch to testify as to what Victim told her during the physical examination.

For ease of review, we recount that at trial, Victim first testified about the incident as summarized above. Subsequently, Nurse Lynch testified that at the hospital, she asked Victim for the "history" and "facts" needed "to base her medical care off of." N.T., 1/17/18, at 123-24. Before the nurse said anything about what Victim had told her that day, Appellant raised an objection on hearsay grounds. *Id.* at 125. At sidebar discussion, the trial court overruled the objection, accepting the Commonwealth's argument that the testimony was admissible under the medical diagnosis/treatment exception to the general rule against hearsay.[6] *Id.* at 126-27. Nurse Lynch then testified as to what Victim told her about the incident, including that it was Appellant who was perpetrator. *Id.* at 128-29. The nurse also stated Victim was emotional but "a good historian" and spoke with a "matter of factness." *Id.* at 123-24. We note Appellant did not object to this testimony. *See id.*

On appeal, Appellant maintains these statements by Nurse Lynch at trial were inadmissible hearsay. He avers Nurse Lynch should have been precluded from stating that he was the perpetrator, pursuant to *Smith*. *See Smith*,

---

[6] *See* Pa.R.E. 803(4)(A)-(B) (statements not excluded by rule against hearsay include one that: "(A) is made for — and is reasonably pertinent to — medical treatment or diagnosis in contemplation of treatment; and (B) describes medical history, past or present symptoms, pain, or sensations, or . . . the cause . . . thereof, insofar as reasonably pertinent to treatment, or diagnosis . . . .").

681 A.2d at 1293 (declining to extend medical treatment exception to statements identifying alleged abuser). Furthermore, Appellant alleges Nurse Lynch should have been precluded from "vouch[ing] for [V]ictim's propensity for telling the truth," and that the trial court's error requires a new trial. Appellant's Brief at 20. No relief is due.

The admission of evidence is "a matter vested within the sound discretion of the trial court." ***Commonwealth v. Gonzalez***, 109 A.3d 711, 726 (Pa. Super. 2015). Generally, "[h]earsay is not admissible." Pa.R.E. 802. Hearsay is defined as "a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Pa.R.E. 801(c)(1)-(2). One exception to the general hearsay rule is set forth at Pennsylvania Rule of Evidence 803.1:

> The following statements are not excluded by the rule against hearsay if the declarant testifies and is subject to cross-examination about the prior statement:
>
> * * *
>
> (2) Prior Statement of Identification by Declarant-Witness. A prior statement by a declarant-witness identifying a person or thing, made after perceiving the person or thing, provided that the declarant-witness testifies to the making of the prior statement.

Pa.R.E. 803.1(2). Our Supreme Court has also stated that "hearsay concerns are virtually non-existent where an out-of-court declarant is a witness in a

judicial proceeding." ***Commonwealth v. Romero***, 722 A.2d 1014, 1017 (Pa. 1999).

Here, Victim had already testified about what occurred and identified Appellant as the perpetrator. ***See*** N.T., 1/17/18, at 47-48. Victim also testified she told the nurse at the hospital about "what happened." ***Id.*** at 58. Nurse Lynch then testified about what Victim told her.[7] ***Id.*** at 128. Thus, this testimony falls under the hearsay exception set forth at Rule 803.1(2). ***See*** Pa.R.E. 803.1(2); ***Romero***, 772 A.2d at 1017. At trial, Appellant made no request to re-cross-examine Victim following Nurse Lynch's testimony, and on appeal, makes no argument that Victim was not available for such cross-examination. Accordingly, no relief is due.[8]

---

[7] The trial court pointed that Nurse Lynch's testimony — as to what Victim told her about the incident — was "almost verbatim" to Victim's trial testimony. Trial Ct. Op. at 4; ***see also*** N.T., 1/17/18, at 47-48, 51, 128-29.

[8] Furthermore, we could find this issue waived for failure to raise a contemporaneous objection. ***See Commonwealth v. Pearson***, 685 A.2d 551, 555 (Pa. Super. 1996) (*en banc*) ("Failure to raise a contemporaneous objection to the evidence at trial waives that claim on appeal. Pa.R.A.P. 302(a)[. A defendant] may not raise a new theory for an objection made at trial on his appeal."). Appellant lodged only a general hearsay objection to preclude Nurse Lynch from testifying about what Victim told her. ***See*** N.T., 1/17/18, at 125-26 (Appellant arguing witness should be "called to only say that she did an exam"). Appellant made no specific objection to Nurse Lynch's testimony about Victim's truthfulness or Victim's identification of Appellant as the perpetrator, and Appellant made no contemporaneous argument that this testimony fell outside the scope of the medical treatment exception. ***See id.*** at 124, 128.

In Appellant's second claim, he alleges a ***Brady*** violation, where the Commonwealth refused, despite his repeated demands, to memorialize in writing "the oral information" it had provided him. Appellant's Brief at 24. In further support of his ***Brady*** claim, Appellant argues the Commonwealth failed to, *inter alia*: (1) get the clothes Victim was wearing on the night of the incident; (2) "memorialize (**or did not know**) [Victim] was apparently suicidal . . . prior to her revealing the alleged rape to her mother;" (3) "memorialize the reason for not dealing with active warrants" against Victim's mother; and (4) "memorialize the false statements of the mother [that Appellant intended to flee to Puerto Rico] and the fact that the Commonwealth knew the statements were false." ***Id.*** at 25-26. Appellant acknowledges the trial court's response, that the Commonwealth did not have any "written material" but was "disclosing the verbal material" it did have. ***Id.*** at 24. No relief is due.

> This Court has stated:
>
> To establish a ***Brady*** violation, an appellant must prove three elements: (1) the evidence at issue was favorable to the accused, either because it is exculpatory or because it impeaches; (2) the **evidence was suppressed by the prosecution**, either willfully or inadvertently; and (3) prejudice ensued. The burden rests with the appellant to "prove, by reference to the record, that **evidence was withheld or suppressed by the prosecution**." The evidence at issue must have been "material evidence that deprived the defendant of a fair trial." "Favorable evidence is material, and constitutional error results from its suppression by the government, if there is a reasonable probability that, **had the evidence been disclosed to the defense**, the result of the proceeding would have been different. . . .

> . . . The duty to disclose is limited to information in the possession of the government bringing the prosecution, and the duty **does** extend to exculpatory evidence in the files of police agencies of the government bringing the prosecution. **Brady is not violated when the appellant knew** or, with reasonable diligence, could have uncovered **the evidence in question**, or when the evidence was available to the defense from other sources. **Brady** sets forth a limited duty, not a general rule of discovery for criminal cases.

**Ovalles**, 144 A.3d at 965 (citations omitted) (some emphases added).

Appellant's invocation of **Brady** is mistaken. First, he contends the trial court erred in not requiring the Commonwealth to provide in writing the information it had already verbally given him. **Brady** imposes no such obligation that information, provided by a prosecutor to the defendant, be in written form. Second, Appellant does not claim the Commonwealth refused to "disclose all exculpatory information material to the guilt or punishment of an accused." **See Ovalles**, 144 A.3d at 965. Instead, he acknowledges the Commonwealth provided him information — albeit in a form he did not prefer — and, alternatively, the Commonwealth may not have known about Victim's alleged suicidal thoughts. **See** Appellant's Brief at 25-26. Furthermore, with respect to Appellant's claim concerning the clothes Victim was wearing, we note: (1) he presents no explanation nor evidence why they would be exculpatory; and (2) he ignores the trial court's reasoning that "[e]ven if [Victim] still had the clothes [from] the night in question, police training dictates that the physical evidence on the clothes could be compromised since the incident took place seven months earlier." **See** Trial Ct. Op. at 4 (footnote omitted). As Appellant fails to "prove, by reference to the record, that

- 10 -

evidence was withheld or suppressed by the prosecution," no relief is due under **Brady**. **See Ovalles**, 144 A.3d at 965 (citation omitted).

Next, Appellant avers, "The trial court erred in conduct with witnesses including not sequestering them from each other and in allowing mid-trial conferences with a professional witness." Appellant's Brief at 31. This claim is identical to the issue as framed in his Rule 1925(b) statement. **See** Appellant's 1925b Statement of Matters Complained of on Appeal, 6/20/18, at 1. Both the trial court and the Commonwealth suggest Appellant has waived this issue by not providing sufficient explanation in his Rule 1925(b) statement. Trial Ct. Op. at 5; Commonwealth's Brief at 19. The trial court explained:

> [Appellant] does not clarify what mid-trial conferences he alleged transpired. This Court can only find one instance on the record in which [Appellant] requested witnesses be sequestered during the trial. [Appellant] requested the affiant[, Officer Dewees,] be sequestered outside, to which the Commonwealth acquiesced and the Court agreed. [N.T., 1/18/18, at 18.] Without more clarity pertaining to what exact incidents [Appellant] refers to in his Appeal, it is not possible for this Court to address the argument.

Trial Ct. Op. at 5.

Our Supreme Court has recently stated that under **Commonwealth v. Lord**, 719 A.2d 306 (Pa. 1998), and **Commonwealth v. Butler**, 812 A.2d 631 (Pa. 2002), an appellant

> is required to strictly comply with the provisions of Rule 1925(b), or his or her appellate issues are deemed to be waived. Rule 1925(b)(4)(ii) directs that "[t]he Statement shall concisely identify each error that the appellant intends to assert **with sufficient detail to identify the issue to be raised for the**

**judge**." Pa.R.A.P. 1925(b)(4)(ii) (emphasis added). As the comment to Rule 1925(b) further elaborates:

> . . . [C]ounsel should begin the winnowing process when preparing the Statement and **should articulate specific errors with which the appellant takes issue and why**.

Pa.R.A.P. 1925(b), *comment* (emphasis added).

***Commonwealth v. Parrish***, \_\_\_ A.3d \_\_\_, \_\_\_, 2020 WL 355016 at **14-15 (Pa. Jan. 22, 2020).

We first consider the portion of Appellant's Rule 1925(b) claim concerning "mid-trial conferences with a professional witness." ***See*** Appellant's 1925b Statement of Matters Complained of on Appeal at 1. The Rule 1925(b) statement did not identify or offer further explanation about this "professional witness" or any "mid-trial conference[ ]." ***See id.*** Appellant's **brief**, on the other hand, asserts Officer Dewees was improperly "allowed to confer with the district attorney mid-[cross-]examination," when defense counsel was "[taking] the officer to task for his lack of investigation [before] filing the charges." Appellant's Brief at 34. Appellant further contends the trial court improperly "attempted to coach the District Attorney on how to rehabilitate her witness, and told her to . . . confer with the officer about how to testify." ***Id.*** at 35.

We emphasize the trial court did not comprehend the issue Appellant wished to present. ***See*** Trial Ct. Op. at 5. Accordingly, we conclude Appellant's Rule 1925(b) statement failed to "assert with sufficient detail to

identify the issue to be raised for the judge," and thus this issue is waived. *See* Pa.R.A.P. 1925(b)(4)(ii); *Parrish*, ___ A.3d at ___, 2020 WL 355016 at **14-15.

The other portion of Appellant's claim was that the trial court "erred in conduct with witnesses including not sequestering them from each other." Appellant's 1925b Statement of Matters Complained of on Appeal at 1. We note that "a request for sequestration must be specific and supported by a showing that the interests of justice require it." *Commonwealth v. Counterman*, 719 A.2d 284, 299 (Pa. 1998).

The trial court addressed this issue by pointing out that Appellant only made one request for sequestration — regarding Officer Dewees — and the court **granted** it. Trial Ct. Op. at 5, *citing* N.T., 1/18/18, at 18. However, on appeal, Appellant alleges that "in violation of sequestration," Victim, her sister, and their mother "were permitted to sit together [outside the courtroom] and tailor[ ] their testimony" about Victim's "suicide attempt that was never revealed to anyone prior to trial." Appellant's Brief at 31-32. Appellant also cites, as "evidence for breach of the sequestration," the uniformity of the three witnesses' denial at trial that Victim was the writer of a message, addressed to Appellant, on the back of Victim's school photo. *Id.* at 33. We could conclude the Rule 1925(b) likewise failed to sufficiently inform the court of this particular allegation of error, and we could find waiver under Rule 1925(b)(4)(ii). *See* Trial Ct. Op. at 5.

Nevertheless, we agree with the Commonwealth's contention that Appellant has waived this issue by failing to raise it at trial. *See* Commonwealth's Brief at 19. *See Counterman*, 719 A.2d at 299 (request for sequestration must be specific and supported by showing that interests of justice require it). To this end, we note that in his brief, Appellant contends that "off the record," he "requested and was granted sequestration," as evidenced by the "on the record . . . side bar" clarification that his wife leave the courtroom. Appellant's Brief at 31, *citing* N.T., 1/17/18, at 3. The page of the trial transcript cited by Appellant reveals only he requested that his wife be permitted to **stay** in the courtroom for opening argument. N.T., 1/17/18, at 3. The trial court denied this request once Appellant stated she would testify at trial. *Id.* The transcript does not indicate — and Appellant does not claim on appeal — that he ever specifically requested sequestration of Victim, Sister, and their mother. Furthermore, Appellant raised no objection to any of these witnesses' testimony on the ground they had improperly shared their testimony with each other. Accordingly, this issue is waived. *See* Pa.R.A.P. 302(a); *Counterman*, 719 A.2d at 299.

In Appellant's fourth issue, he alleges the trial court erred in applying the psychotherapist-patient privilege, both in discovery and at trial, to preclude evidence of Victim's mental health diagnoses and medication. Appellant contends medical records may be admitted to impeach a witness, and may be admitted where the records have a connection to the subject of

the litigation and affect a witness' ability to testify. He asserts Victim "was apparently suicidal about 24 hours before being examined by a nurse" and "the precariousness of her mental health may have been based on delusions." Appellant's Brief at 39. Finally, Appellant also requests relief under the Confrontation Clause. No relief is due.

"We review the trial court's discovery rulings for abuse of discretion." ***Gonzalez***, 109 A.3d at 728. As stated above, the admission of evidence is "a matter vested within the sound discretion of the trial court." ***Id.*** at 726. Section 7111 of the Mental Health Procedures Act[9] (MHPA), upon which the trial court relied, provides:

### § 7111. Confidentiality of records

(a) All documents concerning persons in treatment shall be kept confidential and, without the person's written consent, may not be released or their contents disclosed to anyone except:

(1) those engaged in providing treatment for the person;

(2) the county administrator, pursuant to section 110;

(3) a court in the course of legal proceedings authorized by this act; and

(4) pursuant to Federal rules, statutes and regulations governing disclosure of patient information where treatment is undertaken in a Federal agency.

50 P.S. § 7111(a)(1)-(4) (footnote omitted). "The MHPA must be strictly construed. [It] limits judicial use of mental health records to **mental health**

---

[9] 50 P.S. §§ 7101-7503.

**commitment proceedings** unless the patient consents to their use in other judicial proceedings." ***Gonzalez***, 109 A.3d at 728, *citing* ***Commonwealth v. Moyer***, 595 A.2d 1177, 1179 (Pa. Super. 1991) (emphasis added).

The trial court addressed in further detail the reasons why Appellant sought Victim's mental health records, and concluded:

> In summary, [Appellant] follows the following argument [sic] for [his] basis of the release of these records. According to [Appellant], it was discovered that [V]ictim had been seen numerous times at this hospital in question, as early as 2007. In 2014, [V]ictim had been seeing a therapist, and was prescribed antipsychotic medications. [Appellant] believes that this information should be available because during [V]ictim's forensic interview, she claim[ed] that before the incident she had a completely normal life. He claims that these records show that this was actually not accurate, and she actually had problems since 2007, showing that she has a lack of credibility. [The Commonwealth,] however, denied all of these statements. [It] stated that [V]ictim had just expressed that her life had been worse since the [incident] and did not make any suggestions that her life had been incredibly normal before this event.
>
> . . . Since [V]ictim never represented herself in the way that [Appellant] has suggested, the privilege is not waived, and the evidence cannot be admitted. Therefore, the court did not err in denying the introduction of evidence of [V]ictim's mental health diagnoses, because mental health records are privileged from discovery.

Trial Ct. Op. at 6 (citations to record omitted).

Appellant's argument does not address — nor dispute — this reasoning by the trial court. Appellant also fails to address why Section 7111(3) does not bar the admission of Victim's mental health records in this criminal proceeding. ***See*** 50 P.S. § 7111(3); ***Gonzalez***, 109 A.3d at 728. In light of

the foregoing authority and the trial court's reasoning, no relief is due. ***See***

***Gonzalez***, 109 A.3d at 726.

Appellant's fifth claim is that the trial court erred in precluding evidence of a Facebook message or photo posted by Victim. We first recount that Appellant filed a pre-trial motion in *limine*, which alleged that on December 6, 2016, Victim posted on Facebook "an obscene picture" of "a naked woman on all fours with her bottom in the air. The photo is titled Dick'quil. The caption reads, 'That Deep-stroking, Hair pullin, Ass slapping, Gut bangin, Waist Grippin, Neck choking, Toe curlin, Leg Shakin, Shit talkin medicine TO MAKE YOU CUM.'" Appellant's Motion in *Limine*, 9/8/17, at 2. The motion averred that on that same day, Victim had participated in a forensic interview, in which she "describe[d] the alleged rape and how traumatic it has been both psychologically and emotionally." ***Id.*** Appellant argued the Facebook post did not violate the Rape Shield Law,[10] and he sought to present it in order to impeach Victim's credibility. The trial court initially granted this motion, but at a hearing on October 13, 2017, the Commonwealth requested reconsideration, arguing the Facebook post was precluded under ***Commonwealth v. Jones***, 826 A.2d 900 (Pa. Super. 2003) (*en banc*) (Rape Shield Law applies to sexual activity that occurred before trial, regardless of

---

[10] 18 Pa.C.S. § 3104 (discussed ***infra***).

whether it was before or after alleged sexual assault).  On November 1, 2017, the court issued an order precluding the Facebook post at trial.

On appeal, Appellant argues the evidence was admissible, not to show Victim's promiscuity, but rather to undermine Victim's credibility pursuant to *Killen*, 680 A.2d 851.  He avers that in that case, our Supreme Court held "suggestive statements made by the victim shortly after the alleged sexual assault were admissible, not to show her promiscuous demeanor, but to undermine the credibility of her claims that she had been sexually assaulted." Appellant's Brief at 43, *citing **Killen***, 680 A.2d at 854.  We note the trial court's reasoning for denying Appellant's motion in *limine* is not set forth in its opinion or the certified record.[11]  Nevertheless, we conclude no relief is due.

The Rape Shield Law, codified at 18 Pa.C.S. § 3104, provides in pertinent part:

> Evidence of specific instances of the alleged victim's past sexual conduct . . . and reputation evidence of the alleged victim's past sexual conduct shall not be admissible in prosecutions of any [sexual offense] except evidence of the alleged victim's past sexual conduct with the defendant where consent of the alleged victim is at issue and such evidence is otherwise admissible pursuant to the rules of evidence.

---

[11] While the trial court's opinion sets forth relevant law, including the Rape Shield Law statute and a summary of *Killen*, it did not state its reasons for precluding the proffered evidence.  *See* Trial Ct. Op. at 7.

- 18 -

18 Pa.C.S. § 3104(a), (c). "The purpose of the Rape Shield Law is to prevent a sexual assault trial from denigrating into an attack upon the victim's reputation for chastity." *Killen*, 680 A.2d at 853.

In *Killen*, upon which Appellant relies, the complainant alleged she was intoxicated when a uniformed police officer stopped her vehicle "in front of her apartment for a speeding violation." *Killen*, 680 A.2d at 851. The officer allowed the complainant to go into her apartment to get her driver's license, and followed her into the apartment. *Id.* at 852. The complainant alleged the officer fondled her, took off his pants and underwear, and pushed her head in order for her to perform oral sex. *Id.* The officer left, and shortly thereafter the complainant reported what had just happened to a neighbor. *Id.* The neighbor called an ambulance, and while waiting for it, "observed the complainant apparently lapse in and out of consciousness twice." *Id.* During the ambulance ride to the medical center, the complainant made "sexually provocative statements" to the firefighter riding with her, as well as to the emergency room physician. *Id.* at 852-53.

At trial, the officer sought to introduce the statements to the fireman and physician "for the limited purpose of impeaching the complainant's credibility by demonstrating her state of mind immediately after the alleged attack." *Killen*, 680 A.2d at 854 (footnote omitted). Our Supreme Court held the statements did **not** come within the protective purview of the Rape Shield Law. *Id.* It reasoned the statements did "not reference in any way the

complainant's **past** sexual conduct as proscribed by § 3104(a); rather, the statements evidence the complainant's state of mind shortly **after** (and by implication during) her alleged sexual assault and are therefore relevant and admissible to impeach her credibility." ***Id.***

Here, Appellant does not claim that Victim's alleged Facebook post was made "shortly after" the incident; we note it would have been made nine months later. ***See Killen***, 680 A.2d at 854. Instead, Appellant avers the post was made on the same day Victim participated in a forensic interview. We disagree that such evidence would show, consistent with ***Killen***, Victim's state of mind "shortly after (and by implication during) [the] alleged sexual assault." ***See id.*** Thus, we disagree that relief is due under ***Killen***.

Furthermore, even if ***Killen*** lent Appellant relief, he makes no argument on appeal regarding ***Jones***, the decision cited by the Commonwealth at the October 13, 2017, hearing. In ***Jones***, this Court held the Rape Shield Law does not only preclude evidence of a victim's sexual conduct that occurred prior to an alleged sexual assault, but the Rape Shield Law "must be read more broadly" to include "the complainant's entire sexual history that has occurred **before trial**." ***Jones***, 826 A.2d at 908 (emphasis added).

Considering this authority together, as well as our standard of review — that the admission of evidence was vested within the trial court's sound discretion — we conclude the alleged Facebook post by Victim was properly precluded, and that Appellant is not entitled to relief under ***Killen***. ***See***

***Gonzalez***, 109 A.3d at 726. We note the Pennsylvania Supreme Court has recently granted allowance of appeal to consider ***Jones***. ***Commonwealth v. Rogers***, 523 EAL 2019 (Pa. Feb. 12, 2020). Nevertheless, where the Supreme Court has not yet issued a decision, ***Jones*** remains binding on this Court. ***See Commonwealth v. Pepe***, 897 A.2d 463, 465 (Pa. Super. 2006).

In Appellant's sixth issue, he avers the trial court erred in denying his request for "Jury Instruction[ ] 3.21B (failure to produce Documents or Other Tangible Objects)," with respect to the "missing clothes" that Victim was wearing during the incident, and "4.08A (Impeachment by Inconsistent Statements)," with respect to the "dramatic" alterations, "through the course of this case," to "many important details, from the date of the incident to conduct after the incident." Appellant's Brief at 45-46; ***see*** N.T., 1/18/18, at 67.

The Commonwealth contends Appellant has waived this issue for failure to object to the jury instructions as given. Commonwealth's Brief at 30. "No portions of the charge nor omissions from the charge may be assigned as error, unless specific objections are made thereto **before the jury retires** to deliberate." Pa.R.Crim.P. 647(C) (emphasis added). Under Rule 647(C), the failure to object or take exception to a jury instruction **before the jury retires** to deliberate results in waiver of review of the instruction. ***Commonwealth v. Laird***, 988 A.2d 618, 646 (Pa. 2010). ***See also Commonwealth v. Cosby***, 224 A.3d 372, ___, 2019 WL 6711477 at ** 37-

38 (Pa. Super. Dec. 10, 2019) (party's "objections at the charging conference were not sufficient to preserve his challenge to the consciousness-of-guilt jury charge issued by the trial court because he did not also object when the charge was given to the jury").

Here, the trial court conducted a pre-charging conference following the presentation of evidence. N.T., 1/18/18, at 66-67. Appellant recounted to the court that it had requested the "3.21B" and "4.08A" instructions, but the court had denied it. *Id.* at 67. The parties then gave closing arguments, *id.* at 70-105, and the court issued its instructions to the jury. *Id.* at 105-28. No objections were made during the instructions. *See id.* Thereafter, the court asked the parties whether they had any objections, and Appellant objected only to the court's misstatement of a date of a forensic interview. *Id.* at 128-29. The court agreed, and advised the jury of the correct date. 130-131. No other objections were raised before the jury retired to deliberate. *See id.* at 131. Although Appellant had requested certain instructions, which were denied, he did not object to the instructions as they were in fact given. According, this issue is waived for our review. *See* Pa.Crim.P. 647(C); *Laird*, 988 A.2d at 646; *Cosby*, 224 A.3d at ___, 2019 WL 6711477 at ** 37-38.

In his final issue, Appellant avers the verdict was against the weight of the evidence.[12]  He contends this Court "can see that the complaining witnesses all altered their stories, failed to accurately account for time, and were directly contradicted by their own statements in written accounts from the hospital, forensic interview, and police statement."  Appellant's Brief at 52.  Appellant also contends "the medical records" contained no evidence of sexual assault, and there was "blatant lack of follow through and investigation by" Officer Dewees.  *Id.* at 53.  We disagree.

This Court has stated:

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses.  An appellate court cannot substitute its judgment for that of the finder of fact.
>
> Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence.  Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Champney*, 832 A.2d 403, 408 (Pa. 2003) (citations omitted).  It is well established "that uncorroborated testimony of the victim can be sufficient to sustain a conviction of rape." *Commonwealth v. Loner*, 836 A.2d 125, 137 (Pa. Super. 2003).

---

[12] In this issue, Appellant does not reference any of his convictions, let alone discuss which elements of which offense were allegedly not established.

Appellant fails to acknowledge any of these principles. His argument wholly ignores the role of the jury, who as the finder of fact, was "free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." **See Champney**, 832 A.2d at 408. Appellant also ignores that the trial court denied relief on this issue as raised in his post-sentence motion. **See** Order, 5/4/19. The court reasoned that "[e]ven with any perceived absence of 'investigatory information,'" Victim's testimony supported the jury's verdict. Trial Ct. Op. at 8-9. Appellant's argument would have this Court conduct *de novo* review of the record and supplant the jury's findings with our own. This we cannot do. **See Champney**, 832 A.2d at 408.

In sum, we conclude Appellant has waived his challenges to: portions of Nurse Lynch's testimony; the court's alleged failure to sequester witnesses and error "in allowing mid-trial conferences with a professional witness;" and the jury instructions. **See** Appellant's Brief at 31. We further hold: no relief is due to Appellant under **Brady**; the trial court properly precluded Victim's mental health records under the psychotherapist-patient privilege; the court properly precluded evidence of an alleged Facebook post by Victim, and the verdict was not against the weight of the evidence. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date: 5/20/2020*